ANNIE C. BELDING, Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—No. 40808.—215 S. W. (2d) 506.

Court en Banc, October 11, 1948.

Rehearing Denied, December 13, 1948.

492

*Fordyce, White, Mayne, Williams & Hartman* and *F. W. Schwarz* for appellant.

*Oscar Habenicht* for respondent; *Orville Richardson* of counsel.

494

[508] LEEDY, C. J.—This cause, being an appeal from the Circuit Court of the City of St. Louis, was heard and determined by the St. Louis Court of Appeals, resulting in the affirmance of a judgment against defendant (appellant). See 205 S. W. 2d 866. That court disallowed defendant's point that it was prejudicially erroneous to permit plaintiff's attorney to comment unfavorably on the failure of the defendant to produce witnesses present at the casualty and found on the bus at the very time, whose names and addresses had been obtained by the motorman. The propriety of that ruling is the single question presented on this submission. The cause reaches here upon application of defendant to transfer to this court for final determination under Art. V, § 10 of the Constitution and Rule 2.06 of this court. No question is raised as to the disposition made of two other points urged by defendant in the Court of Appeals, and we, accordingly,

adopt that portion of its opinion as our own (quotation marks omitted):

This is an action for damages for personal injuries sustained by plaintiff, Annie C. Belding, while she was a passenger on a bus owned and operated by defendant, St. Louis Public Service Company. Upon a trial to a jury, a verdict was returned in favor of plaintiff, and against defendant, for the sum of $7,500. Judgment was entered in accordance with the verdict; and following an unavailing motion for a new trial, defendant gave notice of appeal, and by proper steps has caused the case to be transferred to this court for our review.

The time of the accident was around 7:30 o'clock on the morning of January 31, 1945. The bus was northbound on Kingshighway, one of the principal thoroughfares in the City of St. Louis; and the accident occurred a few feet north of the point where Magnolia Avenue enters Kingshighway from the west opposite Tower Grove Park.

When plaintiff boarded the bus there were no empty seats, and she at first stood in the aisle alongside the third seat from the front. As a matter of fact, the driver testified that he had a "standing load", and for such reason had not picked up any passengers "for quite a ways south on the highway". A witness for plaintiff, Mrs. Katherine Meuser, testified that people were packed in the bus to such an extent that she "stood by the bus driver in the front".

Plaintiff expected to transfer to another bus at Southwest Avenue, and as the bus approached the point of transfer, she started making her way through the aisle towards the exit door near the rear. After the bus crossed Arsenal Street it seemed to increase its speed; and while plaintiff was in the position indicated, there was a jerking and jarring as the bus was brought to a sudden stop, causing plaintiff to be thrown down upon the floor and to sustain the injuries for which she has brought this action.

Defendant's explanation of the occurrence was that a southbound automobile, traveling either on the center line of the street or else to the east of the center line, sideswiped the right side of a northbound automobile at a point about sixty feet ahead of the bus; and that in an attempt to escape the southbound automobile, which had veered towards the bus after colliding with the northbound automobile, the driver of the bus applied his brakes and swerved slightly to the right, but was unsuccessful in getting out of the path of the southbound automobile, which struck the left front corner of the bus and then bounded back and came to a stop some three or four feet away from the bus.

The case was pleaded and submitted upon the theory of res ipsa loquitur, that is, that the bus suddenly and violently jerked, jarred, and jolted in an unusual and extraordinary manner as the direct result of the negligence of defendant, causing plaintiff to be thrown to the floor and injured.

Defendant has no criticism of the statement of plaintiff's claim in her petition, nor does it find any fault with the form of her instruction No. 1, which charged the jury that if they found the facts regarding the jerking, jarring, and jolting of the bus, then such facts were sufficient circumstantial evidence to warrant a finding that the occurrence was occasioned by some negligence of defendant, unless they found from [509] other facts and circumstances in evidence that the ocurrence was not due to the negligence of defendant.

But while voicing no objection to the form of instruction No. 1, defendant nevertheless complains of the court's action in giving it upon the ground that plaintiff's evidence, in the view defendant takes of it, had disclosed the specific negligence responsible for the accident, thus reducing the issue to the specific negligence shown, and precluding plaintiff's right to have had her cause submitted upon the theory of res ipsa loquitur.

The controversy over this feature of the case is based upon certain testimony given by plaintiff herself, and by her witness, Mrs. Katherine Meuser, with reference to the application of the brakes.

It will be recalled that plaintiff, at the time of the accident, was attempting to make her way through the crowded aisle to the exit door, and was facing towards the rear of the bus.

In attempting to relate what she had known of the accident from such disadvantageous position in the bus, plaintiff testified that "there was quite a commotion . . . . , a jarring and a jerking", which caused her to be thrown down upon the floor. Asked what kind of a jerk it was, she replied, "It was a sudden application of the brakes." She also testified that "she could feel that", and that she heard a "squeaky noise" from the brakes, which "sounded like when a man drives a car and it is going too fast and he pushes his hand over to stop it quick". Later she stated that "when they put on the brakes the jarring threw me to the floor".

Mrs. Katherine Meuser had stood immediately behind the bus driver facing towards the west, and she testified: "We were going at a fairly good speed and I heard brakes and felt them, and I fell, and that was the story."

From such evidence defendant argues that plaintiff demonstrated the specific cause of the happening by clearly and definitely ascribing it to the application of the brakes, and thus denied herself the right to have had her case submitted upon the theory of res ipsa loquitur as employed in her instruction No. 1.

The doctrine of res ipsa loquitur is a rule of evidence peculiar to the law of negligence, which relieves the plaintiff, in a case to which the doctrine applies, of the necessity of specific proof of definite acts or omissions constituting negligence on the part of the defendant and proximately resulting in the plaintiff's injury. Glasco Electric Co. v.

Union Electric Light & Power Co., 332 Mo. 1079, 61 S. W. 2d 955. While it is a rule of circumstantial evidence, it does not rest for its application upon specific circumstances peculiar to the individual occurrence and pointing of their own force to a specific human fault, but in its strict and distinctive sense is based upon "the generic circumstances peculiar to the class of physical causes producing the occurrence" and pointing to no specific human fault. Kapros v. Pierce Oil Corporation, 324 Mo. 992, 1002, 25 S. W. 2d 777, 781; Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S. W. 2d 240; 38 Am. Jur., Negligence, sec. 297. It is a rule of law for the court, which attaches a definite probative value to the facts attending the occurrence in the light of common experience (Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S. W. 2d 455), and warrants the jury's finding of the ultimate fact of some kind of negligence from the fact of the unusual occurrence itself. Harke v. Haase, 335 Mo. 1104, 75 S. W. 2d 1001.

In one sense the doctrine of res ipsa loquitur is a rule of necessity in that it is only to be invoked where the instrumentality producing the injury was in the exclusive control of the defendant, so that evidence regarding the true cause of the occurrence is practically accessible to the defendant, but inaccessible to the injured plaintiff. In other words, the doctrine presupposes that the plaintiff, from the nature of the occurrence, is unable to point out the particular act or omission responsible for his injury, and that the defendant has the superior knowledge or means of information as to the real cause of the accident. Gibbs v. General Motors Corporation, 350 Mo. 431, 166 S. W. 2d 575.

[510] It follows, therefore, that when the plaintiff, having pleaded a case of res ipsa loquitur, goes so far in his own evidence as to point out, and reveal his knowledge of, the specific act of negligence which was responsible for his injury, there is neither room nor necessity for the application of the doctrine. But on the other hand, even though the plaintiff's evidence may tend to show the specific cause of the accident, he will nevertheless not lose the benefit of the doctrine, nor be deprived of the right to rely upon it in the submission of his case," if, after his evidence is in, "the true cause is still left in doubt or is not clearly shown". Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. 2d 163; Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S. W. 2d 21; Powell v. St. Joseph Ry., Light, Heat & Power Co., 336 Mo. 1016, 81 S. W. 2d 957; Glasco Electric Co. v. Union Electric Light & Power Co., supra; Williams v. St. Louis-San Francisco Ry. Co., 337 Mo. 667, 85 S. W. 2d 624; Price v. Metropolitan Street Ry. Co., 220 Mo. 435, 119 S. W. 932; 45 C. J. 1206-1207.

In the case at bar the reference in plaintiff's evidence to the sudden application of the brakes may not be said to have so clearly pointed

out and identified any specific act of negligence on the part of defendant or its driver as to have constituted a waiver of plaintiff's right to rely upon the doctrine of res ipsa loquitur.

It is to be borne in mind that a case in which the plaintiff invokes the doctrine of res ipsa loquitur is no less a negligence action than one in which he charges specific negligence. In other words, the doctrine does not dispense with the necessity that the plaintiff who charges negligence must prove it, but relates only to the method by which the defendant's negligence may be shown. Hendricks v. Weaver, Mo. Sup., 183 S. W. 2d 74. It is not a rule of substantive law, but merely one of evidence, and operates as a substitute for specific proof of negligence. Glasco Electric Co. v. Union Electric Light & Power Co., supra. And not only is the plaintiff obligated to show general negligence on the defendant's part, but the burden of persuasion remains upon him throughout the entire case. McCloskey v. Koplar, 329 Mo. 527, 46 S. W. 2d 557.

In the present case it was not enough for plaintiff merely to show that she had been injured while a passenger on the bus, but in order to establish a basis for an inference of negligence on defendant's part, it was essential that she show what "occasioned or legally caused the injury", and that such unusual occurrence, whatever it may have been, was something related to defendant and under its management and control. Unless the thing which occasioned her injury was made known, it obviously could not speak for itself or warrant a finding by the jury that defendant was, guilty of actionable negligence. Semler v. Kansas City Public Service Co., 355 Mo. 388, 196 S. W. 2d 197.

It was to meet this burden that plaintiff testified she was caused to fall on account of a jarring and jerking of the bus resulting from a sudden application of the brakes. In other words, she not only showed her injury while a passenger on the bus, but also connected the occurrence with the brakes as generally explanatory of the jarring and jerking of the bus, which was the basis of the case of res ipsa loquitur. However, she did not go so far as to show any specific negligent act or omission on the part of defendant or the driver with respect to the function or application of the brakes. For instance, she did not attempt to show any mechanical defect in the brakes, or an improper maintenance of air pressure, or an improperly applied pressure on the brakes. It is true that something of the latter appeared from the testimony of defendant's witness Holifield, the driver of the bus, but evidence appearing from defendant's side of the case did not destroy plaintiff's right to rely upon res ipsa loquitur when her own evidence had shown no more than the unusual occurrence when the brakes were applied. Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. 2d 797. Even though plaintiff's own evidence did generally ascribe the occurrence to the application of the brakes,

there was no pointing out of a specific ground of negligence in that regard upon which [511] issue could be joined; and the court committed no error in submitting the case by her instruction No. 1 upon the theory of res ipsa loquitur.

The case at bar is readily distinguishable from Hoeller v. St. Louis Public Service Co., Mo. App., 199 S. W. 2d 7, upon which defendant relies in support of its point that plaintiff's evidence so fully disclosed the specific negligence responsible for her injury as to have barred her right to recover under the res ipsa loquitur doctrine.

In the Hoeller case, just as in the case at bar, the plaintiff was injured when a street car upon which she was a passenger was brought to a sudden, violent, and unusual stop. One of the questions for this court's decision was whether plaintiff's evidence made the submission of the case on the res ipsa loquitur doctrine erroneous. The plaintiff, Mrs. Hoeller, testified merely that she had felt the brakes being suddenly applied, and that she had never experienced a stop like the one on that occasion, although she had ridden street cars for a number of years. This court held that the testimony of Mrs. Hoeller, standing alone, could not be said to have been sufficient to show clearly the specific negligence which had caused her injury, but that a specific negligence case was nevertheless made on plaintiff's whole evidence, that is, on plaintiff's own testimony taken along with that of her daughter, who testified that she was familiar with "the feel of the car" as brakes were being applied, and that on the particular occasion "the brakes were suddenly jammed on".

In other words, the daughter's testimony made a case of specific negligence with respect to an improperly applied pressure on the brakes—something lacking in plaintiff's evidence in the case at bar, where plaintiff's own testimony and that of her witness, Mrs. Katherine Meuser, was no more specific than the testimony of Mrs. Hoeller herself, which the court held was insufficient to show clearly the specific negligence responsible for the occurrence. Neither plaintiff nor Mrs. Meuser testified to any such familiarity with the "feel" of the brakes as Mrs. Hoeller's daughter had professed, but instead revealed nothing more by their testimony than the unusual occurrence which was the basis of the case of res ipsa loquitur. Moreover the stop in the Hoeller case, as distinguished from the stop in the case at bar, was at a regular stopping point for the discharge of passengers; and it is obvious that a sudden, violent, and unusual stop at a regular stopping point tends to a far greater degree to show specific negligence of its own force than does proof of a similar stop between regular stopping points, which might be explained as the product of the exercise of care in an attempt to avoid collision with another vehicle.

The next question for decision is whether the verdict for $7,500 is excessive.

Plaintiff, a widow, was sixty-seven years of age at the time her injury was received, and was making her home with a younger sister. Prior to her injury she had enjoyed good health, and had supported herself by her own efforts for the fifteen years she had been a widow. For the greater part of that time she had worked in private homes, but for the last year and a half had been employed at a printing and stationery establishment in downtown St. Louis, where she earned $20 a week. She was on her way to work at the time of the accident.

She returned home after the accident, and in the afternoon was taken in a taxicab to the office of Dr. Edward N. Snyder, the family physician. Her principal injury consisted of fractures of the eighth and ninth ribs on the left side, together with a large grated area over the right scapula, the whole area of which was tense and indurated. She was also suffering from shock, and was extremely nervous and agitated.

Dr. Snyder immobilized the area over the fractured ribs with adhesive tape, which he removed in three weeks after the fractures had healed. He applied a surgical dressing to the tender area of the chest, and also prescribed internal medicine for the nerves. Plaintiff called at his office twice a week for the first three or four weeks, and afterwards about once a month, the last visit having been within a period of two weeks before the trial.

[512] Dr. Snyder testified that while plaintiff had recovered considerably so far as acute symptoms were concerned, she still complained of occasional headaches and of pain extending throughout her chest, arms, and shoulders up into her neck, and still exhibited evidence of extreme nervousness, for which he had given her a standard prescription. She had also lost weight during the period following the accident. When he was asked to give his opinion as to how long plaintiff would continue to suffer from the pain he had described, Dr. Snyder answered, "I believe it to be a permanent condition." The reasonable charge for the services he had rendered was approximately $100.

Plaintiff likewise testified to the pain she was still suffering, and stated that she had not been able to do any work since the accident. This embraced not only her regular employment, but any housework as well. She gave as the reason that she didn't have "the strength and the ambition". In this she was supported by her sister, who testified that she combed plaintiff's hair and attended to other similar personal wants, and would put electric pads on plaintiff at night, and place pillows under her shoulders. The sister testified further that along with plaintiff's general loss of strength, "her voice is weak and she can't talk very much". The difficulty in speaking had occurred "just lately", or at least within the period of the last six months.

It must be confessed that plaintiff's actual physical injuries, while extremely painful at the time, were not in and of themselves particularly severe; and if she were merely to be compensated for two fractured ribs along with whatever tenderness was noted over the chest, the verdict might well be thought to be excessive. However the chief and permanent disability from which plaintiff suffers is the damage done to her nervous system, which, if her evidence is to be believed (and the jury did believe it), has left her an invalid for all practical purposes, incapable of working as she had done before the accident, and to be subjected during the remaining years of her life to the continued pain and suffering attributable to her injury.

The question of the extent of her injury, under such circumstances, was peculiarly one for the jury to determine; and this is also the type of case where an appellate court must accord great weight to the fact that the verdict was approved by the trial judge, who not only observed plaintiff for himself throughout the trial, but also had an enviable opportunity for ascertaining whether the jury was influenced by either sympathy or prejudice in arriving at its verdict.

Moreover the entire verdict is not limited to compensation for physical injuries and the pain and suffering resulting therefrom. Plaintiff had lost better than $1,700 in wages by the time of the trial, and had incurred a doctor's bill of $100. Her earning power has been destroyed, and she faces the future dependent upon others in so far as she may have no means of her own. The decreased purchasing power of any compensation afforded her is also a proper factor to be taken into account. Marshall v. St. Louis Union Trust Co., Mo. App., 196 S. W. 2d 435. All things considered, the verdict may not be said to shock the judicial sense of right nor present a situation for appellate interference.

This brings us to a consideration of the argument of plaintiff's counsel,[1] the propriety [513] of which is the single question involved upon the present submission. The trial court disallowed defendant's challenge of the offending argument, which ruling the Court of Appeals upheld. This court, deeming that question to be of suf-

[1]"Mr. Habenicht: If it may please the Court, and Ladies and Gentlemen of the jury: I have had a great responsibility in the trial of this case and ever since I was retained to represent this lady I have done my very best as an officer of this Court to bring before you the testimony upon which we sought a recovery and we seek a recovery. I didn't try to keep any of the witnesses away from this Court. There were a number of witnesses who knew something about this accident who are under the control of this defendant, or whose names are under the control of this defendant, but they didn't—

"Mr. Owen: If the Court please, I object to that statement on the part of Mr. Habenicht. He has a right to obtain all names of witnesses obtained by a party and could have had them by resorting to legal processes. The comment is unfair.

"The Court: The objection will be overruled."

ficient general interest or importance, ordered the cause transferred here for final determination. There was no dispute over the fact that immediately after the casualty, defendant's bus driver (or a police officer acting for him) passed out cards whereby the names of several passengers on the bus were obtained. These were turned in to the defendant company with the driver's report of the accident. The driver stated he did not recognize any of such persons as among those in court. One Ringkamp, an investigator in the employ of defendant's insurer, testified that he interviewed and took statements from some eight or ten persons, who were presumably those whose names had been obtained by the driver.

We are satisfied with the Court of Appeals' conclusion respecting plaintiff's contention that, because her counsel's statement was interrupted, defendant seeks to infer prejudice from an argument never made. In that connection the Court of Appeals said: "There is no point to the suggestion that plaintiff's counsel was interrupted before he had completed his argument, and that defendant is therefore in the position of claiming prejudice from an argument never made. Just as defendant says, the inference was entirely clear—that plaintiff had produced all witnesses known to her, but that defendant had not produced a number of witnesses who knew something about the accident, and who were either under defendant's control, or whose names were under its control. It is obvious that plaintiff's counsel was attempting to have the jury believe that defendant, as distinguished from plaintiff, had not produced all available evidence that might have aided the jury in reaching a correct result, which could only have been for the reason that defendant knew that such witnesses, if produced, would have supported plaintiff's case and have testified unfavorably to defendant. Where a legitimate basis exists, it is of course entirely proper for one party to comment upon his adversary's failure to have produced material witnesses; and the question for our decision consequently resolves itself into one of whether such comment was proper under the circumstances of the present case."

We are not in accord with the court's ultimate conclusion that the trial court committed no error in sanctioning the challenged argument. It is true, as the Court of Appeals points out, that it had dealt with an identical situation in Myer v. Wells, 277 S. W. 585 (decided in 1925, and prior to the enactment of our new Civil Code), wherein comment of plaintiff's counsel on the failure of the defendant railway company to produce witnesses whose names had been procured at the scene by the conductor and arguing an unfavorable inference arose from that circumstance was held to be prejudicial misconduct constituting reversible error. However, that opinion was quashed by this court on certiorari as being in conflict with controlling decisions of this court. State ex rel. Myer v. Daues, 315 Mo. 186, 285 S. W.

986. That holding was based on the premise that counsel, subject to the discretion of the trial court, are to be given wide play in argument to the jury, and that it might be assumed that the names were furnished by the conductor in the course of duty to be used in case of litigation; that defendant knew such names and addresses, and it was within its power to have produced them as witnesses, but that *"plaintiff did not know their names and it was not within her power to have produced them as witnesses."* While the opinion in the certiorari case does not really discuss the question of the availability of witnesses to the respective parties from the standpoint of whether plaintiff, before the trial, might have taken legal steps to force the disclosure of the names taken by the conductor, nevertheless, the import of the italicized language above is unmistakably a denial of any such right, and the conclusion there reached is based on that view. This is not consistent with State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S. W. 2d 907, where this court held that the statute authorizing [514] interrogatories to parties (§ 85, Civil Code, Laws '43, p. 379; § 847.85, Mo. R. S. A.) makes the scope of examination thereon coextensive with that permitted on depositions, and in elaborating thereon on motion for rehearing said: "However, the operator might have to refresh his memory from the memorandum he made at the time (it is agreed that operators are required to make such a list) in order to fully answer the question. If he had made such a memorandum and delivered it to a company official, and the company has it in its files, why should not an officer of the company state the names shown on it in answer to a proper question on interrogatories? Certainly the corporation knows facts that are shown by its records. See 6 Cyclopedia of Federal Practice, 842, Sec. 2814; Creden v. Central R. Co., D. C., 1 F. R. D. 168. All that our opinion means is that plaintiff is entitled to this information, under State ex rel. Evans v. Broaddus, 245 Mo. 123, 149 S. W. 473, Ann. Cas. 1914A, 823, and should be allowed to get it either from the operator on a deposition or from defendant on interrogatories. Either one or the other may obtain it or it may take both." See also State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S. W. 2d 645, 166 A. L. R. 1425. Whether State ex rel. Myer v. Daues, supra, is based on an outright erroneous view of the law, or is merely inconsistent with the later Buzard case, it should no longer be followed, and it is overruled.

There is no dispute concerning the governing principle, i. e., that no inference may be drawn, and no unfavorable comment made by counsel on account of the non-production of witnesses whose evidence is equally available. There was no showing that the passengers whose names were under control of defendant were employes of defendant, or that there was any relationship between them and the company other than that of carrier and passenger. With the expedi-

504

tious and inexpensive way open to plaintiff under the new Civil Code (§ 85, Civil Code, Laws '43, p. 379; § 847.85, Mo. R. S. A.) to procure the names in question, we think that, so far as availability of such witnesses is concerned, the parties stood in the same position, in a legal sense, and that the argument exceeded the bounds of legitimate advocacy to such an extent as to constitute reversible error.

Judgment reversed and cause remanded. All concur except *Tipton, J.*, not sitting.