**ADAM HAT STORES, Inc., Respondent,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, Appellant.**

No. 22569.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1957.

Benj. M. Powers, City Counselor, John J. Cosgrove, Associate City Counselor, Robert A. Meyers, Asst. City Counselor, Kansas City, for appellant.

Homer A. Cope, Joseph H. Glass, Donald W. Browne, Walter A. Raymond, Kansas City, for respondent.

HUNTER, Judge.

Adam Hat Stores, Inc., plaintiff-respondent herein, sued the City of Kansas City for property damage to certain of its merchandise in the sum of $3,812.49 resulting from a break in the City's water main located in the public street in front of plaintiff's store where the merchandise was kept. The cause was submitted to the jury under the res ipsa loquitur doctrine, and the jury returned its verdict for defendant. Thereafter, the trial court granted a new trial because of its alleged error in denying plaintiff's counsel the right to comment on the failure of defendant to call as witnesses the two employees of defendant City who were at the scene of the occurrence, and who, according to plaintiff's contention must have possessed some relevant knowledge as to the cause of the occurrence.

On this appeal only two questions are presented; namely, (1) does the res ipsa

loquitur doctrine apply to the facts inherent in this case, and (2) did the trial judge err in granting a new trial.

The facts are relatively undisputed. On August 31, 1953, one of defendant's water mains carrying approximately 100 pounds of pressure split and cracked open and water therefrom flowed into the basement of plaintiff's store causing damage to its merchandise stored there. Plaintiff's evidence, except as it related to the amount of damages, consisted of defendant's answers to interrogatories propounded by plaintiff. In those answers defendant City stated that the pipe line in question was laid prior to 1900, no exact date being available. Its water department records showed no rupture or repairs prior to this breaking. The break occurred on the hydrant branch between the control valve in the middle of 12th Street and the hydrant located at the south curb of 12th Street, immediately in front of plaintiff's place of business. The pipe was set approximately four feet under the surface of the street. It was six-inch pipe. Defendant City owned and exercised complete and exclusive control over the installation and maintenance of all water works equipment in the public streets and the connecting water system. It did not know what caused the break.

On behalf of defendant, the testimony of E. E. Bolls, a civil engineer and specialist in water works engineering was that over 90 per cent of municipal water mains, including this one, were made of cast iron pipe. Such cast iron pipe has a minimum life expectancy of 100 years or more, and some is known to have been in service for over 300 years. Engineers never recommend replacing a water main of cast iron pipe because of its age. Once the pipe is in use in the ground there is no way to inspect it except to take it out of the ground. Corrosion is very seldom a problem. The causes of such pipes breaking are (1) excessive internal water pressure, (2) excessive impact loading to outside of pipe, (3) settlement of the soils around the pipe, and (4) electrolysis. Defendant also adduced evidence to the effect that the water pressure was normal at the time of the break; that in the opinion of its expert witnesses the break was not caused by internal water pressure, electrolysis or external loading. It could have been broken due to uneven settlement of the soils, but its witness was unable to reach any conclusion as to the actual cause of the break. The testimony also indicated that when cast iron pipe breaks it literally fractures, and very seldom has small leaks. Defendant City has over 1,000 miles of such water mains.

We first examine defendant's contention that the court erred in submitting the case under the res ipsa loquitur doctrine. Although it cites authorities in support of its contention, defendant concedes that the question of whether or not the bursting of an underground water main is in itself sufficient evidence of negligence to submit the question to the jury under the res ipsa loquitur doctrine has never been decided by the Appellate Courts of Missouri.

■ The water main and connecting system were owned by and were within the exclusive control of defendant which was operating them for revenue and profit, and it had the duty to maintain its water mains in a reasonably safe condition. A negligent breach of defendant's duty to maintain them in that reasonably safe condition is actionable. Lober v. Kansas City, Mo.Sup., 74 S.W.2d 815.

■ The res ipsa loquitur doctrine has been defined as meaning that negligence can be proved by circumstantial evidence, and that certain circumstances, as to the character of an accident, are sufficient to take a case to the jury. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003. The basis of the allowable inference of negligence is the doctrine of probabilities. Byers v. Essex Investment Co., 281 Mo. 375, 219 S.W. 570, 571; Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 98. Our Supreme Court in McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641, de-

clared the following three conditions necessary before doctrine may be applied:

"(a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge used due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence."

 In a res ipsa loquitur case the plaintiff has the burden of proving each factual ingredient necessary for a prima facie case. McCloskey v. Koplar, supra. This does not mean that plaintiff is required to present evidence overthrowing every reasonable theory of nonliability on the part of the defendant. Warner v. Terminal Railroad Association of St. Louis, 363 Mo. 1082, 257 S.W.2d 75; Shafer v. Southwestern Bell Telephone Co., Mo.Sup., 295 S.W.2d 109, 113. Nor is it requisite in order to invoke the doctrine that plaintiff's case be such as to exclude every hypothesis but that of defendant's negligence. As stated in Cooper v. 804 Grand Bldg. Corp., Mo.Sup., 257 S.W.2d 649, 652: "* * * the attendant facts must raise a reasonable inference of a defendant's negligence (but they need not exclude every other inference). Maxie v. Gulf, Mobile & O. R. Co., 358 Mo. 1100, 219 S.W.2d 322, 10 A.L.R.2d 1273." Or as sometimes stated, the proof should establish the desired inference with such certainty as to cause it to be the more reasonable and probable of the conclusions to be drawn. Frazier v. Ford Motor Co., 365 Mo. 62, 276 S.W.2d 95, 100. The doctrine cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances from which negligence may be inferred are not proved but must themselves be presumed. Charlton v. Lovelace, 351 Mo. 364, 173 S.W.2d 13; Hart v. Emery, Bird, Thayer Dry Goods Co., 233 Mo.App. 312, 118 S.W.2d 509.

 Testing the case at bar by these established principles we note that in de-

fendant's answers to interrogatories it admits that the instrumentalities involved (the operating water system including the pipe in question) were under the management and control of defendant. Certainly upon the breaking of one of its water pipes buried in its public street and functioning as a part of its water system defendant possesses superior knowledge or means of information as to the cause of the occurrence. Lober v. Kansas City, supra. A more difficult question is presented in determining whether the occurrence (the bursting of the pipe) resulting in injury was such as does not ordinarily happen if those in charge use due care. Defendant contends the evidence that a water pipe buried in the ground for over fifty years bursts for the first time permits as equally a reasonable inference as any other that the cause of the break was one for which defendant is not liable, such as the pipe breaking from settlement of the earth because of drought conditions. We acknowledge that the question presented is a close one, but we are unable to agree with defendant's conclusion. Our views in substance are coincidental with those expressed in George Foltis, Inc., v. City of New York, 174 Misc. 967, 21 N.Y.S.2d 800, loc. cit. 803: "The water main here in question was within the control of the defendant. It was defendant who selected the pipes and laid them. Cast-iron water mains which are properly laid four feet underground ordinarily do not break, any more than ordinarily trains are derailed, missiles fly, or elevators or walls fall; and when such a main does break the inference of negligence follows in logical sequence * * *." On further appeal in Foltis, Inc., v. City of New York, 287 N.Y. 108, 38 N.E.2d 455, 461, 153 A.L.R. 1122, 1129 the Court stated "* * we think that both reason and the weight of authority support the ruling of the trial judge * * *. We agree that under the rule res ipsa loquitur the plaintiff's proof that its property was damaged by a break in a water main constructed and controlled by the city was sufficient to establish *prima facie* that the injury was due to negligence of the city." There is some division of

authority on the question. Annotation, 11 A.L.R.2d 1187. However, to our minds the better reasoned cases support our view that the doctrine applies. A consistent result has been reached in the case of Anello v. Kansas City, Mo.App., 286 S.W.2d 49, where this Court held that the res ipsa loquitur doctrine applied in an action for damages to property caused by a break in a sewer line constructed by and under the control of defendant City, and in the case of Lober v. Kansas City, Mo., 74 S.W.2d 815, where the Supreme Court held the doctrine applicable where water under seventy-five to one hundred pounds of pressure suddenly discharged from the city's water hydrant damaging property of plaintiff located across the street.

Defendant places great emphasis on the fact that the water pipe had been buried underground for over fifty years before bursting, and that it is very difficult as a practical matter, if not impossible, to anticipate such a break or to determine its cause thereafter. The fact that the break occurred in the water main which had been buried in the ground for many years may weaken somewhat the probative value of the evidence inferring negligence, but we conclude that even so there is a sufficient inference of negligence arising from the situation of the unexplained occurrence of the break to cause the doctrine to apply.

As stated in Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 509: "While it is a rule of circumstantial evidence, it does not rest for its application upon specific circumstances peculiar to the individual occurrence and pointing of their own force to a specific human fault, but in its strict and distinctive sense is based upon 'the generic circumstances peculiar to the class of physical causes producing the occurrence' and pointing to no specific human fault. Kapros v. Pierce Oil Corporation, 324 Mo. 992, 1002, 25 S.W.2d 777, 781, 78 A.L.R. 722; Tayer v. York Ice Machinery Corporation, 342 Mo. 912, 119 S.W.2d 240 [117 A.L.R. 1414]; 38 Am.Jur., Negligence, sec. 297. It is a rule of law for the court,

which attaches a definite probative value to the facts attending the occurrence in the light of common experience (Turner v. Missouri-Kansas-Texas R. Co., 346 Mo. 28, 142 S.W.2d 455, 129 A.L.R. 829), and warrants the jury's finding of the ultimate fact of some kind of negligence from the fact of the unusual occurrence itself. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001." The jury may, as indeed it did here, find that upon all the evidence the defendant should prevail, and that its verdict should be for the defendant. Harke v. Haase, supra.

Some additional facts are pertinent to defendant's other objection. One of the interrogatories in evidence asked defendant, "Did any of your employees inspect the premises occupied by plaintiff, and, if so, state their names and addresses and what their inspection disclosed." Answer: "Charles H. Chapman and Robert F. Fliehman. And in addition thereto, the record disclosed no itemization of damages, but a general statement to the effect that there had been an undetermined quantity of merchandise damaged and that they noticed about one inch of water on the floor and that the water had perhaps been as high as eighteen inches on the wall." During the trial plaintiff's counsel asked one of plaintiff's witnesses if he had observed anyone from the City or their employees "inspecting those premises?" Defendant's counsel objected to the question on the ground "it is admitted in the interrogatories, the two boys were down there, Judge." Plaintiff's counsel then withdrew the question. Defendant did not call either Chapman or Fliehman as a witness. During plaintiff's closing argument the following occurred: " * * * He (defendant's counsel) says, 'We don't know what happened.' He brings in Mr. Bolls from out there at Black & Veatch, the expert. He didn't know how old that pipe was. He knew everything else about it, but he didn't know how old that pipe was. Gentlemen—ladies and gentlemen, there are two people who know what happened here and their

names are included in the defendant's answer to plaintiff's interrogatories under oath, Mr. Charles H. Chapman and Robert Fliehman. Did defendant bring those gentlemen in here? They were at the scene—

"Mr. Myers: Object to that as being a misquotation—an attempt to make the jury—

"The Court: They are just as accessible to you as to him. The jury will disregard that argument." Believing his ruling and comment was error the trial court sustained plaintiff's motion for a new trial. Defendant contends the trial court erred in granting the new trial in that plaintiff had the full benefit of the testimony of those two men through the City's answer to the interrogatory, and no unfavorable inference arises from failure to produce corroborating witnesses. We limit ourselves to that particular contention.

The governing and established principle is that no inference may be drawn, and no unfavorable comment may be made by counsel on account of non-production of witnesses whose testimony is equally available to the parties. Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W.2d 506, 514; Hancock v. Union Pacific R. Co., Mo.App., 231 S.W.2d 225, 228–229. Winkler v. Pittsburgh, C. C. & St. L. R. Co., 321 Mo. 27, 10 S.W.2d 649. As to the word "available" as so used, it does not mean merely available or accessible for service of compulsory process—a subpoena, but rather depends upon such matters as the party's superior means of knowledge of the existence and identity of the witnesses, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of one party and against the other.

Narens v. St. Louis Public Service Co., Mo.App., 238 S.W.2d 37; Blick v. Nickel Sav., Inv. & Bldg. Ass'n, Mo.Sup., 216 S.W.2d 509, 512. It is a well-established general rule that the testimony of an employee of one of the parties who may be expected to have relevant testimony on the issue of the case is not equally available to the opposing party, and that it is proper for counsel to comment on the failure of the employer-party to produce that employee, and to suggest an inference that his testimony would have been unfavorable to such employer. Hancock v. Union Pacific R. Co., Mo.App., 231 S.W.2d 225, 229; Russell v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 595, 599; Miller v. Fleming, Mo.App., 259 S.W. 139, 141; Alexander v. St. Louis-San Francisco Ry. Co., 327 Mo. 1012, 38 S.W.2d 1023, 1028. However, defendant is not required to produce every possible witness, and an unfavorable inference may not be drawn where it appears that the evidence not produced would have been relatively unimportant in the case, either as inferior to that realized, or else as merely corroborative of, or cumulative to such evidence. Wilson v. Miss Hulling's Cafeterias, Inc., 360 Mo. 559, 229 S.W.2d 556, 562; Russell v. St. Louis Public Service Co., supra. In the instant case there is no sound basis for successfully contending that the evidence of the two city employees would be unimportant and inferior to evidence already realized, or merely corroborative or cumulative to such evidence. No testimony of these two individuals, by deposition or otherwise, was in evidence. Nor upon examination can the City's answer to interrogatories be said to be their testimony on the issues of the case so as to make their testimony at the trial merely corroborative, and thus prohibit plaintiff from its otherwise right to comment on the defendant City's failure to call them as witnesses. Cf. Block v. Rackers, Mo.Sup., 256 S.W.2d 760, 761, 764; Wheeler v. Missouri Pac. R. Co., 322 Mo. 271, 18 S.W. 2d 494, 497; Van Volkinburgh v. Kansas

City Public Service Co., Mo.App., 254 S.W. 2d 287, 288–289.

Having erred in denying to plaintiff the right to comment on the failure of defendant to call as witnesses its two employees who admittedly were at the scene of the occurrence the trial court had authority to grant a new trial.

The action of the trial judge in granting the new trial because of his erroneous ruling on counsel's argument in affirmed and the case is remanded accordingly.

All concur.