**COLONIAL CONSTRUCTION CO., Ltd., Respondent,**

**v.**

**SHARP INDUSTRIES, INC., Appellant.**

No. 24653.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Application to Transfer Denied Jan. 8, 1968.

Thomas J. Leittem, John H. Altergott, Jr., Shughart, Thomson & Kilroy, Kansas City, for appellent.

MAUGHMER, Commissioner.

This dispute concerns one-half ($8,-614.15) of a "change order" payment made under a rather large United States Government construction contract. The plaintiff prevailed and had the verdict and judgment for the exact amount sued for. The defendant has appealed.

We first must introduce and become acquainted to some extent with the principals that were deeply involved in this controversy and the events out of which it arose. In the spring of 1957, the United States of America, acting by and through the United States Corps of Engineers, was in the process of constructing a radar screen along the Atlantic coastline of the United States and Canada. Bids were about to be taken and a contract let for the construction of ten communication installations known as "Operation Gap Filler" at sites near Labrador and Newfoundland along the Atlantic shoreline of the Dominion of Canada.

The plaintiff, Colonial Construction Co., Ltd., in its petition named as defendants Sharp Industries, Inc., Sharp Bros. Contracting Co. and Don E. Sharp. Sharp Bros. Contracting Co. is and has been for many years a solvent and successful Missouri corporation. Its president and managing officer was at all times Mr. Don E. Sharp. Colonial Construction Co., Ltd., is a corporation duly organized and existing under the laws of Newfoundland. Its general manager, insofar as the present subject matter is concerned, was Mr. Harlo Haagenson. These two organizations determined to make an effort to obtain the Operation Gap Filler contract. It was required that corporate bidders be domiciled in Canada. Management of Sharp Bros. Contracting Co. apparently did not deem it advisable to involve that company directly in the proposed project and so organized Sharp Industries, Inc., primarily and probably solely, for the purpose of functioning on Operation Gap Filler. The bid of this group was accepted and the contract awarded. Again Don E. Sharp was president, but his brother, Raymond D. Sharp, then living in New York City, was made general manager. The rights and obligations of Sharp Industries and Colonial Construction were enumerated in a written Joint Venture Agreement.

The parties also entered into and this case was tried in part under a Stipulation of Facts. We recite certain pertinent parts of that stipulation:

(1) "Plaintiff Colonial Construction Co., Ltd., and defendant Sharp Industries, Inc. duly entered into a joint venture agreement dated May 21, 1957, under the terms of which the parties agreed to act as joint venturers under the name 'Colonial Construction Company, Ltd., and Sharp Industries, Inc., d/b/a Colonial Construction Co.—Sharp Industries, Inc., a joint venture'; that said joint venture would bid on a construction project known as 'Operation Gap Filler', and, if successful, construct said project as joint venturers, pursuant to the terms of said joint venture agreement."

(2) The joint venture group did bid, was successful, was awarded the contract and started construction. We interpose here to state that the Joint Venture Agreement provided in effect that the parties share equally in expenses and profits. It further provided that Mr. Raymond D. Sharp of New York, brother of Don. E. Sharp, should be employed as general manager of the joint venture and should "receive all payments and disburse all funds".

More than one year thereafter and for reasons which are not quite clear from the record, but which are not of great importance, Sharp Industries, Inc. on December 24, 1958, agreed in writing with Colonial that it would and it did, assume complete control of the construction project from that date on. This control covered construction, management and carried authority to receive payments and endorse and cash all checks and drafts received from

the Government. Colonial was paid an agreed cash consideration and all payments thereafter made by the contractor were to belong to Sharp Industries, Inc. except such as might be made for "change orders", that is, for changes ordered by the Corps of Engineers in modification of the original specifications. Colonial was still to receive one-half of all such "change order" payments. It was stipulated that for the year 1960, only Sharp Industries was authorized to act for the joint venture, including collection and disbursements of checks and monies.

Only one payment is in controversy. It was stipulated that on or about January 15, 1962, Sharp Industries, Inc. received from the United States Government a check in the amount of $17,228.30 (as reduced to United States dollars) and the same represented the amount due under Modification No. 14 and all remaining "change orders". The uncontroverted evidence shows that Sharp Industries, Inc. endorsed this check to Sharp Bros. Contracting Co. for payment of indebtedness due, namely advancements made by Sharp Contracting to Sharp Industries to provide capital for carrying out the construction contract. It is conceded that plaintiff Colonial was entitled to receive one-half ($8,614.15) of this amount. Defendant contends that payment of this sum was made to plantiff or its authorized representative. Although the total payments by the Government under the contract amounted to nearly two million dollars, this particular item is the only one in litigation and in dispute. Actually the only fact issue is—did Sharp Industries, Inc. or someone for it pay this sum of $8,614.15 or a sum which Colonial agreed to accept in satisfaction of the obligation, to Colonial or to its authorized representative?

Mr. Don E. Sharp, then a defendant and president of both Sharp companies, testified. He said that in 1959, Mr. Rolf Siefkin, president, and Mr. Harlo Haagenson, general manager of Colonial, telephoned him on numerous occasions, asking for a settlement in advance for Colonial's share in the payments to be made under pending Modifications No. 13 and No. 14. Mr. Sharp said he refused to do this as he did not know either the exact or the probable amount of such payments. Then payment for Change No. 13 came through and admittedly Colonial was paid its share. Mr. Don E. Sharp testified that in May, 1960, he received a telephone call from New York City and a three way conversation ensued among himself, his brother Raymond D. Sharp and Harlo Haagenson, Colonial's general manager. He said his brother Raymond and Mr. Haagenson told him that they had been informed by the Corps of Engineers that the payment for Modification No. 14, would be between $17,000 and $20,000—likely about $18,000 —and asked him to exchange Colonial's share of this money, which was coming due, for a like share of the retention money, all of which belonged to Sharp Industries, so that Colonial might realize some immediate cash. Don E. Sharp said he immediately called the Corps of Engineers himself and received verification that the figure of $18,000 was approximately correct. Mr. Sharp asserted that he then contacted his brother and Mr. Haagenson and made an oral "gentleman's agreement" with them under which Haagenson, representing Colonial, would be paid $9,000 out of the retention money as fast as they could collect it and in return therefor Colonial was to relinquish its right to share in the payment to be made later under Modification No. 14. Mr. Sharp said that after he made this gentleman's agreement he received no further telephone calls from his brother or from Mr. Haagenson. The payment under Modification No. 14 was made by the Government about January 15, 1962.

The stipulation recited that during the year 1960 there were four deposits, totaling some $24,000 made in the Chase Manhattan National Bank, New York City to the account of Colonial Construction Co., Ltd.—Sharp Industries, Inc., a Joint Ven-

ture, and eight withdrawals, totaling approximately $33,000. It should be here noted that during 1960, only Raymond D. Sharp, the New York brother, had authority to cash checks or make withdrawals.

Trial of this case commenced on April 11, 1966. About two weeks before trial the deposition of Mr. Raymond D. Sharp, the erstwhile New York brother, was taken. At that time he said he resided in Merriam, Kansas. He never signed the deposition. His brother, Don E. Sharp, said he did not know where his brother was, that when he last heard of him he was in Orlando, Florida. The deposition was received and read in evidence. Therein Mr. Raymond D. Sharp stated that: he was not connected with Sharp Bros. Contracting Co. as an officer, stockholder or employee; he was employed and functioned as general manager of the Labrador project and "run the complete works." He corroborated his brother Don as to the three way telephone conversation between Don E. Sharp, himself and Mr. Haagenson. He said that Don E. Sharp agreed that he, Raymond D. Sharp, and Mr. Haagenson should collect the retention money, divide it, and Sharp Industries, Inc. would reimburse itself out of the Modification No. 14 money. The record does not indicate the theory under which Raymond D. Sharp was entitled to receive half. He said that he collected $8,443.75 retention money on August 2, 1960, $2,514.84 on November 16, 1960, $6,000 in December, 1960, and that Haagenson received one-half of each of these payments. He did not remember if he (Sharp) paid Haagenson in cash or by check. He said his record keeper had either died or disappeared, and Sharp could not find the records. Mr. Sharp, during 1960, received one other check but it covered Modification No. 13, about which there is no dispute.

Defendant produced records from the Chase National Bank showing the deposits as described by Mr. Raymond D. Sharp, but no bank records were produced showing how or to whom disbursements thereof

had been made. Mr. Harlo Haagenson, general manager of Colonial, denied unequivocally that he or Colonial had been paid their share of the Modification No. 14 payment, and denied that Raymond D. Sharp had paid him any part thereof.

At the close of the evidence plaintiff dismissed as to defendant Don E. Sharp. The jury returned a verdict for plaintiff and against defendant Sharp Industries, Inc. for $8,614.15 or one-half of the admitted payment made under Modification or Change No. 14, and a verdict in favor of Sharp Bros. Contracting Co. Only Sharp Industries, Inc. has appealed. The respondent plaintiff has not been represented in this court by either written brief or through oral argument.

■ Defendant on appeal says the court erred in allowing plaintiff's counsel in his final argument to comment, over objection, on the failure of defendant to produce records of the Chase Manhattan National Bank showing how or to whom the admitted disbursements had been made, when, under the law and the evidence, said records were equally available to both parties. Defendant in this lawsuit resisted plaintiff's claim by a contention that plaintiff had already been paid. It produced Chase Bank records showing that substantial deposits had been made in that institution during 1960. The parties stipulated that substantial withdrawals had been made during that year. The burden was on defendant to establish its defense of payment. The bank account during 1960, was under the exclusive control of Sharp Industries, Inc. Only Mr. Raymond D. Sharp was authorized to make withdrawals. The argument to which defendant objects is as follows:

"* * * Maybe it was paid out in cash. If they did, they had a counter check, didn't they—or some kind of written statement. Do you think that you or anybody else can walk into the Chase Manhatten Bank and say 'I want six or

seven thousand dollars. Please pay me—'

"MR. LEITTEM: Your Honor, I object. This is improper argument. It is improper to put the jury in the shoes of any one of the parties and ask them what they would do and I ask it be stricken.

"THE COURT: That isn't all he said, objection overruled.

"MR. BUSH: Do you think Ray Sharp could walk into the bank and say, 'Give me $7,178.86. I am not going to sign anything.' You know very well he couldn't. You know those things are in existence now. Why weren't they brought here? There is something mighty funny about those checks. If they were here, they would show that we didn't get a penny of this money.

"MR. LEITTEM: Your Honor, this is improper argument. The Chase Manhattan Bank records were as available to the plaintiff as to the defendant. I object. He is trying to imply that the defendants have some special control over the Chase Manhattan Bank.

"MR. BUSH: I object to the speech.

"THE COURT: You may answer it if you want to.

"MR. BUSH: If I were coming in defense of this lawsuit and the only defense I have got is that Mr. Haagenson got half of these three checks, I would have the checks here or I would have written receipts or something—

"MR. LEITTEM: That is improper argument because he is not defense, Your Honor.

"THE COURT: Objection overruled".

■ We believe the argument was, under all the circumstances, appropriate and permissive. Raymond D. Sharp had testified that he didn't remember whether he had paid Haagenson in cash or by check.

He did not produce any records of his own —canceled checks or otherwise—on this point. He said his bookkeeper had either died or absconded and he had been unable to find his records. The defense contended Haagenson was paid out of the funds deposited in the Chase Bank during 1960. The defense produced the bank records showing the deposits, but none showing the withdrawals. Such evidence was of vital importance. It was inherent in proof of the defense. While plaintiff might, through deposition, have secured such records, we still believe plaintiff had the right to comment on defendant's failure to either produce such evidence or show its non-existence. We agree with defendant's general statement that where a witness is equally available, it is error to comment on one party's failure to produce him. But here primary proof of payment in the form of canceled checks would be either in the custody of Raymond D. Sharp or of defendant if the same had been withdrawn from Chase, and if not withdrawn, would still be in custody of the bank. Furthermore, it is a modern, common practice of banks to make photostats of checks just as it did make photostats of the deposit tickets which defendant did produce. Defendant's failure to produce or show any effort on its part to produce such evidence invited criticism.

Defendant cites five Missouri decisions which it says support the view that such comment amounts to reversible error. We have read those opinions.

In Stephens v. Henningsen, Inc., Mo. App., 358 S.W.2d 450, plaintiff had taken the deposition of the witness who was a stranger to the proceedings, but an observer of the automobile accident. Defendant read the deposition in evidence. Plaintiff's counsel commented on defendant's failure to produce the witness in person and said that plaintiff had thereby been denied the right of cross-examination. Such comment was ruled to be reversible error.

In Belding v. St. Louis Public Service Co., 358 Mo. 491, en Banc., 215 S.W.2d 506, 514, the witness was a passenger on defendant's bus. There was no other relationship between the witness and defendant. Such witness was held to be equally available and any comment on defendant's failure to produce and present him as a witness was ruled to constitute error.

O'Donnell v. St. Louis Public Service Co., Mo.App., 246 S.W.2d 539, 544, is substantially a twin of the Belding case. Defendant also cites Rice, Stix & Co. v. Sally et ux., 176 Mo. 107, 75 S.W. 398. The comment there objected to was not as to a witness.

Finally, in Trzecki v. St. Louis Public Service Co. et al., Mo.Sup., 258 S.W.2d 676, 678, the comment was on the failure of plaintiff to produce as a witness plaintiff's physician who had examined after the accidental injuries. It was held in that case that such witness was not equally available to the litigants.

In our opinion these cases do not support and uphold plaintiff's assignment in the instant case. The point is denied.

Defendant's second and only additional assignment asserts that Instructions No. 2 and 6, when considered with the Forms of Verdict Instructions, are conflicting, and the jury's verdict is not responsive to No. 2, which was plaintiff's verdict directing instruction. We set out the instructions numbered 2 and 6 and the pertinent parts of the Forms of Verdict directions.

## "INSTRUCTION NO. 2.

"Your verdict must be for the plaintiff and against both defendants, if you believe:

"First: That plaintiff and defendant Sharp Industries, Inc. joined together in a joint venture agreement;

"Second: That defendant Sharp Industries, Inc. received a check in the amount of $18,456.44 Canadian dollars from the U. S. Corps of Engineers in January, 1962, of which $17,228.30 U. S. dollars represented payment for certain change orders;

"Third: That by reason of the joint venture agreement, as amended in writing, plaintiff was entitled to one-half of the payment for change orders;

"Fourth: That said check was deposited to the account of Sharp Bros. Contracting Co. in Traders National Bank in Kansas City, Missouri;

"Fifth: That by reason of said check having been deposited to the credit of Sharp Bros. Contracting Co., said Sharp Bros. Contracting Co. has been unjustly enriched;

"Sixth: That plaintiff has demanded one-half of said $17,228.30 U. S. dollars paid for certain change orders;

"Seventh: That plaintiff has been paid no part of said sum; unless you believe plaintiff has been paid as submitted in Instruction No. 3."

## "INSTRUCTION NO. 6.

"You are instructed that nine or more jurors may return a verdict in this case. If all of you agree upon a verdict, your foreman alone will sign it, but if your verdict is returned by nine, or more, and less than twelve jurors, your verdict must be signed by all of the jurors who agree to it."

## "FORMS OF VERDICT

"If you find the issues in favor of the plaintiff and against both defendants, your verdict may be in the following form:

'We, the jury, find the issues in favor of the plaintiff and against both the defendants and assess its damages at $_____.

_____
Foreman".

"If you find the issues in favor of the plaintiff and against one but not both

the defendants, your verdict may be in the following form:

'We, the jury, find the issues in favor of plaintiff and against defendant (here insert only the name of the defendant you find against) and assess its damages at $_____, and we further find the issues in favor of defendant (here insert the name of the defendant in whose favor you find).

_____
Foreman."

It is true as defendant suggests that these instructions are not completely consistent. No. 2 lists the findings required for a verdict against *both* defendants. There was no such instruction for a finding against *one* of the defendants except under Form of Verdict, which did contemplate a possible finding and verdict against one defendant only.

■ We believe first, that the instructions, read and considered in the entirety, were not conflicting and that the verdict cannot reasonably be ruled to be nonresponsive. We believe, secondly, and we rest the decision on this holding, that no error was committed against the appellant "materially affecting the merits of the action". Defendant does not contend that the verdict and judgment are unsupported by substantial and credible evidence. We note this admonition in the Rules of Civil Procedure in Appellate Courts. Rule 83.13 (b), Materiality of Error, V.A.M.R.:

"No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, materially affecting the merits of the action."

Appellant relies on the opinion in Johnson v. Hunter et al., Mo.App., 398 S.W.2d 449. In that case the suit was against the owner and against the driver of a truck which both defendants knew was equipped with faulty brakes. The driver, when the brakes failed, drove into a ditch and his passenger was killed. The verdict directing instruction submitted only as to both defendants jointly. The verdict of the jury was against the owner but in favor of the driver. The point had not been preserved but the court declared it amounted to reversible error. That case is not our case. There the driver and the owner appeared to be inseparably and jointly liable and certainly the court so instructed. In our case, under the evidence, Sharp Industries, Inc. and Sharp Bros. Contracting Co. are not involved alike nor are they equally and inseparably liable. Moreover, the instructions, when read as a whole, did authorize a verdict against only one defendant. We believe the evidence justified the finding against only one defendant. In our opinion the technical inconsistency in the instructions did not constitute error against defendant which "materially affected the merits of the action", and we rule the point against appellant. Defendant has presented no further or additional assignments of error and we find none.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.