**HALL**

v.

**ST. LOUIS PUBLIC SERVICE CO.**

No. 43969.

Supreme Court of Missouri.

En Banc.

April 12, 1954.

Mattingly, Boas & Richards and Lloyd E. Boas, St. Louis, for appellant.

Keegan & Rickhoff, Gregg Wm. Keegan, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff recovered judgment in the sum of $3500 for personal injuries sustained as she attempted to alight from one of defendant's motor buses on which she was a passenger. Upon defendant's appeal to the St. Louis Court of Appeals, the judgment was reversed and the cause remanded on the ground plaintiff's petition pleaded and her evidence showed specific negligence and the trial court had erred in submitting the case to the jury under an instruction embodying the theory of res ipsa loquitur. Hall v. St.

Louis Public Service Co., 259 S.W.2d 88. Upon application of plaintiff the cause was transferred to this court. Article V, § 10, Constitution of Missouri, V.A.M.S., and Supreme Court Rule 2.06, 42 V.A.M.S.

About four o'clock, p. m., on October 13, 1949, plaintiff, a passenger on defendant's eastbound bus, signalled her intention to alight from the bus at Eleventh and Locust Streets. The bus stopped and the doors opened. As plaintiff, facing southward, descended the exit steps the doors of the bus closed upon her body, holding her partly within and partly without the bus. The bus started forward, dragging her with it. Another passenger and probably plaintiff screamed. The doors opened and plaintiff fell to the street upon her hands and knees, sustaining injuries.

The petition pleaded that "while the operation and control and the movement of the doors of said bus were wholly, solely and exclusively within the control of the the defendant, its agent and servant, and while plaintiff was in the act of alighting from said bus the doors of said bus suddenly and violently closed * * * upon the body of plaintiff and plaintiff was caused to be injured * * *. as a direct and proximate cause of the negligence and carelessness of the defendant, its agent and servant, as aforesaid * * *."

The instruction upon which plaintiff's case was submitted directed the jury that if it found that "while plaintiff was in the act of alighting * * * the doors of said bus closed about plaintiff and that (she) was caused to be thrown and injured * * * you may infer that defendant was negligent * * *," etc.

Concededly, the instruction is predicated upon the theory of res ipsa loquitur negligence. In this connection, however, defendant insists it does not comply with the requisites of that doctrine and is fatally defective, in that it does not require a finding of an unusual occurrence, citing Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004, and Fuller v. St. Louis Public Service Co., Mo.App., 245 S.W.2d 675, 677. Defendant's argument runs this wise: That the jury was not required to find a sudden, unusual or violent closing of the doors; that the evidence warranted a finding of nothing more than their untimely closing; that plaintiff was not injured until she fell to the street; and that if anything caused plaintiff's fall it was the closing of the doors and their subsequent reopening.

■ We think this argument begs the question. The closing of the bus doors upon plaintiff's body as she was in the act of alighting from the bus in the usual manner in and of itself bespeaks an unusual occurrence. The fact that the doors closed before she was given time to pass beyond them bespeaks their sudden closing. The fact that they imprisoned her body bespeaks their violent closing.

■ Neither is it sound to argue that the closing of the doors was not an efficient cause of and, inferably, the basic negligence that resulted in plaintiff's fall to the street; and this is true even though the opening of the doors directly contributed to and became a part of the chain of events that culminated in plaintiff's injuries. The closing of the doors, if negligently caused by defendant, need not have been the sole proximate cause of plaintiff's injuries. It was only necessary that their closing be one of the proximate and efficient causes.

■ We hold that the above instruction constituted an adequate submission of plaintiff's case under the res ipsa loquitur doctrine. The question now is whether she was entitled to such a submission under the petition and her testimony. (She was the only witness who testified as to the manner in which she was injured.)

■ The petition is not a model, but it states a cause of action. It pleads more than required by the theory of res ipsa loquitur and less than required of an action for specific negligence. But defendant does not claim to have been misled by it. Had it needed to know the theory upon which plaintiff was relying it could have moved to make the petition more definite and certain.

Apparently, defendant was not concerned about the matter until after verdict; it offered no affirmative defense on the issue of liability. In such a situation, we think the petition should not be viewed with the same strictness it otherwise might have been. That the petition attempts to plead the classical res ipsa loquitur carrier-passenger-unusual occurrence-injury case against defendant is clear. McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361, 364; Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306. In pleading that the operation and control and the movement of doors of the bus were under the exclusive control of defendant, its agent and servant, plaintiff says, in legal effect, that defendant, by and through its operator, was chargeable with knowledge superior to that of plaintiff as to the cause of their closing, which is a well recognized element of the res ipsa loquitur doctrine. McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, 92 A.L.R. 641; Cruce v. Gulf, Mobile & Ohio R. Co., 358 Mo. 589, 216 S.W.2d 78, 80–82; Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306, 307. There is no allegation that the operator closed or caused the doors to close; there is no allegation who or what act or omission of defendant or its operator caused them to close. The petition merely alleges that while the operation and control and movement of the doors were under the exclusive control of defendant and its operator "the doors * * * suddenly closed * * *." Such a general allegation does not exclude consideration of any other negligent act or omission of defendant that may have caused the doors to close. To the contrary, we believe that the allegation includes and was intended to include any negligent act or omission of defendant or its operator that caused them to close. Suppose, for instance: the operator had testified he did not close the doors but admitted they did close as plaintiff testified, and that the jury believed his testimony. Could it be successfully asserted that the petition had so restricted the closing of the doors to an act of the operator that plaintiff could not recover? Certainly, it does not in terms do so.

Plaintiff's testimony was no more specific than the petition. She specified no act or omission by any person that caused the doors to close. Her testimony was that as she descended the steps "the door closed on me before I'm halfway out, part of my body is out and part is in." Although the jury could clearly infer from her testimony that the doors were caused to close by the operator, he being the agent in control of their movement, yet her testimony does not exclude an inference and the jury could have found that they were caused to close by reason of mechanical defects. In the recent case of Williams v. St. Louis Public Service Co., 363 Mo. 625, 253 S.W.2d 97, loc. cit. 102, we considered an analogous situation and of it said: "Appellant insists that, if the evidence is sufficient to make out a submissible issue or prima facie case as to any specific negligence of the defendant which may have been the proximate cause of his injury, the cause may not be submitted under the res ipsa loquitur doctrine. Such is not the rule in this state. The applicable rule appears from the cases above cited. The pleadings and evidence may be such that a cause may be submitted on either general or specific negligence at plaintiff's election. Submission under the res ipsa loquitur doctrine may not be denied unless specific negligence, the real or precise cause is definitely shown by direct evidence." See also Killinger v. Kansas City Public Service Co., Mo.Sup., 259 S.W.2d 391, 395.

Defendant contends that the judgment finally rendered by the circuit court ($3,500) is still grossly excessive. We have concluded that defendant's position in that respect is well taken.

Plaintiff, aged 49 years when injured, testified: She was the manager of the coffee shop of the DeSoto Hotel. When injured she was going to her place of employment, near the point where she left the bus. Upon entering the hotel she was taken to the ladies' room, where she rested for several hours. She then assumed her duties for about an hour, but went home early. She was unable to work the following day. Her knees and hands were bruised, her

shoulders hurt, and she began to menstruate. Her back hurt and she had cramps. Prior to that time her menstrual periods had been regular and normal, lasting five or six days. Thereafter these periods lasted from ten to twenty days and she never knew when to anticipate them and would start to menstruate on the floor. She had undergone a uterine operation fourteen years prior to being injured, but had wholly recovered from it when injured.

Plaintiff was upset, nervous, weak and unable to sleep. She consulted Dr. William White about two weeks after being injured. He examined her and sent her to Dr. Bawell. "They" gave her capsules containing iron and liver extract which she took six times daily for almost a year. She was also examined by Doctors Ambrose and Pernoud. In March, 1950, she was operated upon to remedy her irregular menstrual flow. The operation "helped a lot" and the menstrual trouble has entirely cleared up. As a result of her injuries, plaintiff lost a "lot of time" and an unstated amount of wages. She has seen Dr. White every week or two since she was injured.

Dr. White testified: He saw plaintiff sometime after she was injured. She was suffering from lower abdominal pain and irregular bleeding. She thereafter continued under his treatment, suffering from erratic menstruation. Plaintiff told him she had been in an accident. An emotional upset can cause menstrual irregularity. He tried conservative treatment of plaintiff for a while and in March of 1950 did a curettement.

On cross-examination, Dr. White testified: He did not know whether plaintiff's menstrual trouble was due to emotional upset; she did not appear to be in acute distress when he first saw her. Her menstrual trouble appeared to be a functional disorder and he did not then know its cause. He could not determine whether her condition was merely caused by menopause occurring in a woman of that age or from some other cause. The curettement was performed to determine whether her condition was organic or functional. It was functional. If her condition was caused by trauma it would be organic. Asked whether a fall such as plaintiff suffered in October, 1949, could have caused her menstrual trouble, the witness answered that it could be a precipitating factor. He further testified that in treating plaintiff he never found anything to cause him to believe her condition was due to anything other than a "regular change of life" case. The total charge for all services rendered plaintiff to this date is approximately $175.

Dr. Olney A. Ambrose, a diagnostician, testified in behalf of defendant that he examined plaintiff on March 16, 1951, and obtained from her a history of her fall and her subsequent ailments. It was his opinion that her condition was due to menopause, a change of life. It was also his opinion that a fall such as plaintiff suffered would produce only temporary disruption of the menstrual cycle which would right itself at the next regular menstrual period.

■ An analysis of the testimony most favorable to plaintiff shows that she suffered no physical injuries other than bruises upon her hands and knees when she fell from the bus. She also suffered pain in her shoulder and began to menstruate immediately after the accident, which resulted in severe abdominal cramps. But the evidence is clear that her subsequent suffering from erratic menstruation and its attendant ills was due to oncoming menopause, a phase of the life of women of plaintiff's age. Her own physician stated that while the condition could have been precipitated, that is, hastened, by the fall, yet it essentially was a functional disturbance and was not caused by her fall. Thus, plaintiff's suffering, other than that incident to her superficial traumatic injuries, cannot be compensated in this action. Her medical expense and loss of wages were attributable to a condition not shown to have been caused by her injuries.

■ There is no criterion by which an award that will adequately and yet reasonably compensate plaintiff for the bodily injuries sustained by her, and the mental and physical suffering incident thereto can be

accurately determined. Considering plaintiff's evidence in the light most favorable to plaintiff, we have concluded that an award of $1,500 will fairly compensate her for all damages sustained.

It is therefore ordered that if plaintiff within ten days remit $2,000 of the damages awarded her, as of the date of the judgment in the circuit court, the judgment will be affirmed. Otherwise the judgment is reversed and the cause remanded.

ELLISON, HYDE, DALTON and LEEDY, JJ., and CONKLING, C. J., concur.

TIPTON, J., concurs except as to amount of remittitur.