Ernest H. MARQUARDT, Respondent,

v.

KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation, Appellant.

No. 48472.

Supreme Court of Missouri,

In Banc.

May 14, 1962.

Rehearing Denied June 11, 1962.

Richard S. Righter, Robert D. Youle, W. H. Bates, Kansas City, for defendant-appellant. Lathrop, Righter, Gordon & Parker, Kansas City, of counsel.

Sylvan Bruner, Pittsburg, Kan., Arthur C. Popham, Kansas City, for respondent.

Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

EAGER, Judge.

This is a suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. for personal injuries allegedly due to defendant's negligence. It is conceded that plaintiff and defendant were engaged in interstate commerce. Plaintiff recovered a verdict for $75,000 which was reduced, by a required remittitur, to $50,000. This appeal followed. The case was first submitted in Division One of this court, where an opinion was written but failed of adoption. The case was transferred to the Court in Banc of the Court's own motion.

While we shall relate the facts in some detail, it will suffice to refer to only parts of the pleadings. Plaintiff, 49 years old at the time of the injury, was employed as a laborer at defendant's diesel shops and yard in Pittsburg, Kansas, where he had worked for some years. The present injury occurred on February 13, 1957. Plaintiff and one Evans worked regularly at servicing, fueling, sanding and otherwise maintaining diesel locomotives under Bill Walker as foreman. As a part of this work, they had regularly unloaded sand from boxcars on a spur track into a horizontal cylindrical tank abutting the track, from which it was blown by air pressure into overhead receptacles which, in turn, fed it by gravity into the diesel locomotives. At some time prior to this injury, a new and larger cylindrical sand tank had been placed along the spur track, buried for about one-third of its diameter; the pipe which was to carry sand to the overhead towers had also been installed. This tank was described as about 8–10 feet long and 6 feet in diameter. It lay generally east and west; the spur track ran generally north and south at the west end of the tank. Earth had been excavated in order to set the new tank in the ground; some of this had been used in the "backfill," and apparently the ground had been leveled off. It is not claimed that any holes were

left in the surface. The top of the tank was about even with the doorsill of a boxcar. This new tank had just been connected up with the air pressure on the day before plaintiff's injury. This was done by a Mr. Allison, an employee from defendant's water service department, under the supervision of a foreman from that department. In doing this work an air line was run to the sand tank from the air reservoir tank nearby, so that the air would enter through a "T" at the top of a short vertical pipe welded into the top of the tank near the east end; Allison then removed the "bleeder" or exhaust mechanism from the old tank and installed it on the new one, where he (so he testified) screwed it firmly into the "T" on the upright pipe. This particular mechanism consisted of an upright pipe the overall length of which appears (from photographs) to be perhaps a foot and a half or two feet long, an elbow or "ell," and a "bleed" pipe at the top extending out horizontally from the elbow, and described variously as from 2 to 4 feet long. In the upper portion of the upright there was a valve which was opened and closed by a handle. Thus, there were obviously several threaded joints in the total mechanism. It is conceded that the "bleeder" or exhaust mechanism was supposed to remain stationary when the valve was operated to let air pressure in or out of the tank. There was evidence for the defendant that after this installation was completed about 2:30 p. m. on the day before the injury, the tank and its equipment were thoroughly tested with sand and air pressure and that they operated satisfactorily. Aside from those tests, the use at the time of the injury was the first use shown in the evidence.

Plaintiff, Evans and Walker were working on a shift from midnight to 8:00 a. m.; during the early morning of February 13, 1957, plaintiff and Evans loaded sand from a boxcar into the tank preparatory to blowing it into the overhead receptacles. They had done this work for several years, using the old tank. The loading was done by means of a wheelbarrow and a funnel ar-

rangement. One of these men then closed the exhaust valve and air pressure was turned in from the valve at the reservoir tank. After waiting 20–25 minutes for pressure to build up they tried to blow the sand out, but it did not run through the line. The pressure seemed to be normal on the gauge at the air reservoir. The time was about 5:45 a. m., and while it was "dusk" there was ample light from a flood-light nearby. Plaintiff then got the fore-man, Walker from the diesel shop. Walker thought the air pressure might be low and he brought a new air gauge, which he de-cided to install on the reservoir tank; he shut off the air at the reservoir tank, and told plaintiff to release the exhaust valve on top of the sand tank. Standing at the east end of that tank, plaintiff took hold of the valve handle, 14–18 inches above his head, and pulled it down; immediately the hori-zontal bleeder pipe started whirling around rapidly, and making a noise like a "jet plane." All three men were frightened and they ran; Walker and Evans, standing on the north side of the tank, ran around the end of a boxcar; plaintiff started to run toward the east but slipped and fell when he had proceeded about two feet, with "one leg back underneath me and down on one hand." Thereafter he crawled 8–10 feet farther, and the noise stopped. He testi-fied on cross-examination that the ground was wet, and that there was scattered wet clay around the south side and part of the east end of the tank, which had been dug out. It may fairly be said that plaintiff did not state the precise cause of his slipping and fall. In a hypothetical question to plaintiff's expert his counsel hypothesized that he "slipped there in some clay * * *." Evans, a witness for defendant, testified on cross-examination that there was some wet clay around the place where they worked. Plaintiff testified directly that he had nothing to do with the installation, inspection or maintenance of the tank, and this was specifically corroborated by Evans and by Walker, the foreman, with reference to the equipment on the tank; there was no controverting testimony on this point. It was also shown without controversy that the exhaust pipe mechanism was supposed to remain stationary when the release valve was operated, and that its movement here was wholly unexplained and unusual. The air pressure ordinarily attained in the tank for blowing sand was 90 to 95 pounds per square inch. Defense witnesses testified in detail concerning the installation and tight-ening of the exhaust mechanism, to the test-ing of the tank with air pressure and sand several times, and to the fact that it was operating properly at the end of the preced-ing afternoon. It was developed at the trial that actually the bleeder pipe was whirling (at the time of the injury) in the direction which tightened it and finally stopped it; none of the three men, of course, could know this at the time.

Plaintiff's petition was in one count; it alleged res ipsa negligence in the sudden and unusual movement of the bleeder pipe. Since there has been no contention that these allegations were not sufficient in them-selves, we shall not quote them. In a sepa-rate paragraph plaintiff also pleaded as an additional and separate ground of recovery —"that defendant failed to use ordinary care to provide and maintain said premises where he fell and his said working place in a reasonably safe condition, in that said surface where he moved in an effort to es-cape from the dangers and hazards of said revolving pipe was slick, slippery and dan-gerous, and his footing thereon was inse-cure, and the defendant knew or by the ex-ercise of ordinary care would have timely known of all the above facts long enough prior to him slipping and being injured as aforesaid, to have remedied the same and made said premises and his said working place reasonably safe and thereby have pre-vented him slipping thereon as aforesaid, all of which defendant negligently failed to do, and that the aforesaid negligence of de-fendant in this paragraph set forth directly contributed to the slipping and falling of plaintiff as aforesaid and to his injuries hereinafter set forth." The evidence con-

cerning plaintiff's injuries will be discussed later.

The case was submitted on plaintiff's Instruction No. 1, based upon the res ipsa theory. Since much of the present controversy arises therefrom, we quote it, omitting certain noncontested recitals: "The Court instructs the jury if you believe and find * * * that plaintiff was ordered * * * to turn the lever on the bleed pipe and plaintiff obeyed same, if so, and that immediately thereafter said bleed pipe began swiftly revolving and making a loud noise and violently whirling and thereby created immediate and imminent danger to plaintiff and those near same of being injured therefrom, if you so find, and it thereby necessitated plaintiff and such others hurriedly attempting to escape being injured thereby, if so, and if you find plaintiff was thereby suddenly affrighted and believed and that ordinarily careful and prudent persons in the above-submitted circumstances would have believed, that he and such others were in immediate and imminent danger of being injured by said bleed pipe, if so, and that in attempting to run away and escape therefrom, if so, plaintiff suddenly and involuntarily slipped and his back and body were thereby violently twisted and he was thereby injured, if you so find, and that the installation, maintenance, use and inspection of said bleed pipe and all the above facilities and the mechanics thereof were then and at all times under the exclusive management, maintenance and control of defendant and that plaintiff had no control or right of control over the maintenance, repairing, inspection and conditioning of same, and that said bleed pipe as installed and maintained by defendant was designed and intended in its functions and ordinary use to remain stationary when the lever on the bleed pipe was turned, as aforesaid, and not to revolve nor start whirling, if you so find, and that revolving and whirling thereof was unusual and out of the ordinary, if so, and would not usually occur if those in charge of such facilities exercised ordinary care, if so, then you are instructed that from all the above-submitted facts, if you find them to be the facts, you may find defendant was negligent, unless you find from all the facts and circumstances in evidence that said occurrence and such above-submitted revolving and whirling of said bleed pipe was not due to negligence on the part of defendant; and if you do find and believe from all the facts and circumstances in evidence that defendant was negligent as herein submitted, and that plaintiff's alleged injuries were directly caused either as a whole or in part by such aforesubmitted negligence of defendant, then your verdict shall be for plaintiff and against the defendant company." Plaintiff offered, and the court refused, an instruction submitting specific negligence in failing to furnish a safe place to work by reason of the presence of wet and slick clay.

Defendant argues that plaintiff failed to make a submissible res ipsa case on the evidence. We have no hesitation in holding that plaintiff did make a res ipsa case by his showing of the sudden and admittedly wholly unexpected malfunction of the exhaust mechanism, which was installed by defendant and was wholly under its control, and when neither plaintiff nor his crew had anything to do with its installation, inspection or maintenance. See, generally, Gordon v. Muehling Packing Co., 328 Mo. 123, 40 S.W.2d 693, 697; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W. 2d 473, 475; Leisure v. J. A. Bruening Co., Mo.Sup., 315 S.W.2d 705, 707; Carter v. Skelly Oil Co., 363 Mo. 570, 252 S.W.2d 306, 307; Parlow v. Carson-Union-May-Stern Co., Mo.Sup., 310 S.W.2d 877. The application of the doctrine is not precluded by the existence of a master and servant relationship where the servant is not charged with the duties of installation, inspection, repair or maintenance, and is therefore not charged with equal or superior knowledge. Jones, supra; Gordon, supra; Parlow, supra. And it is not necessary that the facts should exclude every possible hypothesis or inference except that of defendant's negligence, as, for instance,

the possibility that some outsider had tampered with the equipment. Parlow, supra; Maxie v. Gulf, Mobile & Ohio R. Co., 358 Mo. 1100, 219 S.W.2d 322, 325, 10 A.L.R.2d 1273, certiorari denied 338 U.S. 823, 70 S. Ct. 69, 94 L.Ed. 499; Shafer v. Southwestern Bell Telephone Co., Mo., 295 S.W. 2d 109, 113. The evidence here clearly raised a reasonable inference of defendant's negligence in the installation or subsequent care and maintenance of the exhaust equipment; it is obvious that some threaded joint must have been loose in order to permit the horizontal pipe to rotate when the air pressure struck it. The evidence fully established the fact that plaintiff had no duty to inspect this equipment before using it; even his foreman testified to that.

■ The first, and we might say principal, point made by defendant is that plaintiff had no right to a res ipsa submission (Instruction No. 1) when he had pleaded and offered proof of specific negligence, i. e., the furnishing of an allegedly unsafe place to work because of the presence of wet clay. We have recognized in sundry cases that, *ordinarily*, when a plaintiff pleads specific negligence he may not submit on general negligence because, by his plea, he shows that he knows the actual cause, thus eliminating one of the requirements of res ipsa. Venditti v. St. Louis Public Service Co., 360 Mo. 42, 226 S.W.2d 599; Benner v. Terminal R. R. Ass'n of St. Louis, 348 Mo. 928, 156 S.W.2d 657, certiorari denied 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211; Lukitsch v. St. Louis Public Service Co., 362 Mo. 1071, 246 S.W.2d 749; State ex rel. Spears v. McCullen, 357 Mo. 686, 210 S.W. 2d 68. And, while we are not so much concerned with the question, a plaintiff who proves the precise and specific negligence which caused an injury is ordinarily barred from submitting his case on general negligence. McCaffery v. St. Louis Public Service Co., Banc, 363 Mo. 545, 252 S.W.2d 361; Williams v. St. Louis Public Service Co., Banc, 363 Mo. 625, 253 S.W.2d 97; Cudney v. Midcontinent Airlines, Banc, 363 Mo.

922, 254 S.W.2d 662; Hall v. St. Louis Public Service Co., Banc, Mo.Sup., 266 S.W.2d 597; Elder v. Phillip, Mo.App., 252 S.W.2d 656. We need not consider the discussions as to the degree of proof of specific negligence which bars the application of the res ipsa doctrine (Williams, supra; Hall, supra; McCaffery, supra; White v. St. Louis Public Service Co., 364 Mo. 111, 259 S.W.2d 795) for the point emphasized here is that plaintiff's detailed pleading of specific negligence had that effect. We assume, without discussion, that plaintiff's pleading of a failure to furnish a safe place to work was a plea of specific negligence.

■■ The difficulty posed in this case is that the totality of the facts involved two *successive* acts or occurrences of alleged negligence, each separate and distinct from the other. Plaintiff alleged no specific negligence in causing the bleed pipe to rotate. While the problem is certainly not free of difficulty, we have determined that the allegations of specific negligence in failing to furnish plaintiff a safe place to work (and referring to wet, slick clay) should not and do not affect his right to submit a res ipsa theory on the already completed negligence alleged in the sudden and violent revolving of the pipe. We decline to accept the contention of plaintiff's counsel that we should not apply our procedural rules in determining the applicability of res ipsa to Federal Employers' Liability Act cases. When our state courts afford the forum for such cases, we shall continue to apply our own procedure, as distinguished from substantive law. But one feature, at least, of the substantive federal case law is significant here. Under those cases any demonstrated negligence of the defendant which "played a part" in the injury is sufficient to make a submissible case. Moore v. Terminal R. R. Ass'n of St. Louis, 358 U.S. 31, 79 S.Ct. 2, 3 L.Ed.2d 24; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed. 2d 493. Here it was not necessary that the negligent whirling of the pipe, or the failure to furnish a safe place to work should, in itself, constitute the proximate cause of

the injury. If, therefore, plaintiff was reasonably justified in his reaction of fright to the whirling pipe, and if his hurried attempt to escape *contributed* to his injury, then his cause of action for that negligence was complete, and he might elect to ignore the specific negligence (which may also have been a contributing factor) without impairing the always essential element of causation. We do hold that plaintiff's fright, as well as his effort to escape, was a normal, natural and reasonable reaction, and that it is immaterial that the pipe did not strike him.

The cases cited and relied on by defendant as precluding the application of res ipsa where specific negligence is pleaded or proved, are cases where the allegations or proof of general negligence and specific negligence were both directed at the same act or occurrence; therefore, plaintiff's demonstrated knowledge of the specific negligence precluded the necessity of relying upon general negligence. The only possible exception which we have seen is the case of Stubblefield v. Federal Reserve Bank of St. Louis, 356 Mo. 1018, 204 S.W. 2d 718, where a wedge falling from a building to the sidewalk injured plaintiff. It was held there that plaintiff could not successfully rely upon the doctrine of res ipsa, because she had both pleaded and specifically proved the failure of defendants to erect a barricade and a failure to warn. Actually, the failure to barricade or warn had nothing to do with the falling of the wedge or with the act of negligence which caused it to fall; those were separate acts of negligence which contributed to cause the injury. In that view the res ipsa negligence was complete when the wedge fell, and the specific negligence charged and proved was referable to the independent failure to protect plaintiff and other passersby. In so far as that case may be out of harmony with the holding here, it should not be followed. We note however, that this precise point was not raised there and the rulings of both the trial court and this court merely followed the general rule.

There are two cases which lend some support to our present holding, by analogy. In Hall v. St. Louis Public Service Co., Mo.Sup., 266 S.W.2d 597, the doors of a bus closed upon plaintiff while she was attempting to alight; the bus started up, she screamed, the doors opened and she fell out into the street. The case was submitted on the res ipsa theory based upon the *closing* of the doors. The court said, in part, loc. cit. 599, in upholding the submission: "Neither is it sound to argue that the closing of the doors was not an efficient cause of and, inferably, the basic negligence that resulted in plaintiff's fall to the street; and this is true even though the opening of the doors directly contributed to and became a part of the chain of events that culminated in plaintiff's injuries. The closing of the doors, if negligently caused by defendant, need not have been the sole proximate cause of plaintiff's injuries. It was only necessary that their closing be one of the proximate and efficient causes." In Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W. 2d 473, plaintiff, an employee, was riding on a freight elevator (not operating it) when it started to descend with a sudden jerk or "jump"; instinctively, he grabbed a steel gate, which swung with him and he was caught between the gate and the elevator. A res ipsa submission was upheld, upon the theory of the unusual malfunction of the elevator, although it was primarily plaintiff's act of grabbing the gate which caused his injury.

We hold that the submission of general negligence was proper, but we do so on the peculiar facts of this case. We do not mean to impair in any way the general rule that the pleading or precise proof of specific negligence constitutes a bar to the submission of general negligence as to the same act or occurrence, or as to an occurrence which the specific negligence explains.

 Defendant assigns specific error to the giving of Instruction No. 1, already quoted, for the reason that plaintiff did not hypothesize sufficient facts for a res ipsa

loquitur submission; or, in other words, to raise a true res ipsa inference. Specifically, counsel say that no fault of defendant may be inferred from the whirling of the pipe, since defendant's uncontradicted evidence showed the exercise of due care in the installation and testing. This was defensive evidence, and the jury did not have to believe those witnesses. What defendant is really arguing on this point is the weight of its own evidence. The instruction hypothesized (after a rather minute description of the equipment) that the equipment operated contrary to its normal design and function in a highly dangerous and unusual manner, and that it was installed and maintained by defendant and was under its exclusive control. We have already held that these facts were sufficient to raise a res ipsa inference of negligence. True, the instruction ignores the condition of the ground, which defendant now insists was the element causing the injury. As already indicated, that specific negligence was a subsequent and different thing, and the res ipsa instruction properly ignored it. The two types of negligence should not have been combined, and the court properly refused plaintiff's separate tendered instruction on specific negligence, having given Instruction No. 1. Counsel also suggest that the instruction failed to require a finding of actual or constructive notice to the defendant of any existing defect. Notice is not an ordinary requirement in a res ipsa instruction. That element there is a matter of defense. The cases cited by defendant are specific negligence cases. Moreover, all the evidence showed that the exhaust mechanism was installed by employees of another department of defendant. Defendant, through them, was charged with knowledge of any existing defects, no matter how recently created. Howard v. Missouri Pacific R. Co., Mo.Sup., 295 S.W.2d 68. We have considered all the specific objections made to the instruction and, without further elaboration, we find them insubstantial.

Other points made by defendant are: (1) the admission in evidence of the statutory mortality table, over objection, after defendant had rested its case; (2) failure to discharge the jury for allegedly prejudicial argument; and (3) excessiveness of the verdict. We consider these points in that order.

 The admission of evidence out of order is a matter resting almost entirely within the discretion of the trial court. We find no abuse of that discretion in permitting the introduction of the statutory expectancy table immediately after counsel for defendant announced that they rested their case. Counsel for plaintiff then stated: "Before they rest, there is one matter, I was hunting for the statute yesterday and couldn't find the one I wanted." This amounted to a request for leave to reopen plaintiff's case. In the cases cited by defendant evidence proffered out of time was refused, but the court recognized the discretion inherent in the trial court. Thus see, Collins v. Cowger, Mo.Sup., 283 S.W.2d 554. There was no interruption of defendant's case here, such as appeared in State v. Hunt, Mo.App., 335 S.W.2d 506. For a clear and succinct discussion of the subject see Conley v. Dee, Mo.App., 246 S.W.2d 385, 387. We find no abuse of discretion here.

During his opening argument counsel for plaintiff discussed the question of contributory negligence and the instruction submitting that question, and also the burden of proof instruction, with his views of its application to the evidence. The transcript does not contain the arguments of defense counsel. In plaintiff's closing argument his counsel referred to Instruction No. 1 as "the key instruction," asked the jury to read it, stated that the "things" submitted therein were undisputed, and explained the Federal Employers' Liability Act theory of contributory causation; he further stated that the court had necessarily given the theories of both sides in the instructions, and had properly submitted "their theories in these other instructions," but that "in my humble view" the first instruction "settles this whole case." Apparently one of de-

fendant's counsel sought to object to these statements just as the argument was completed, but the court required him to wait until the jury had retired. We shall consider the objection as promptly made. The objection was that this argument invited the jury to ignore "all of the rest of the instructions" and suggested that the other instructions were given "at the behest of the defendant." On these grounds defendant moved for a mistrial. The motion was overruled. In addition to the instructions on contributory negligence and the burden of proof, there were several cautionary and definitive instructions.

■ While this argument strongly emphasized plaintiff's own instruction, that is permissible; if the jury found the facts as hypothesized therein it was directed to find a verdict for plaintiff. There is nothing inherently erroneous in using the word "key." By inference, at least, this argument told the jury that the other instructions were given on defendant's behalf. Actually, this fact would be obvious to anyone who read them. While that part of the argument was technically erroneous, we do not find it reversibly so. A somewhat similar argument was held not to have required a mistrial in Joshmer v. Fred Weber Contractors, Inc., Mo.App., 294 S.W.2d 576, 586, particularly in view of the discretion permitted to the trial court in such matters. There was no attempt here, as in certain of the cited cases, to tell the jury in argument how the *court* felt about the case. Mooney v. Terminal R. Ass'n of St. Louis, 352 Mo. 245, 176 S.W.2d 605; McGowan v. Wells, 324 Mo. 652, 24 S.W.2d 633; Elmore v. Kansas City, Mo. App., 333 S.W.2d 795. Nor was there an injection of a false issue. Casto v. Railway Express Co., Mo.App., 219 S.W.2d 276.

■ The last point made is that the verdict, as reduced from $75,000 to $50,000 by remittitur, is grossly excessive and the result of passion and prejudice. At this point we must review the evidence of plaintiff's injuries and physical condition. He had sustained an injury in 1953 diagnosed as a ruptured disc; he was operated on for this condition, returned to work after being off somewhat more than a year, passed the necessary physical examination, and worked thereafter at substantial labor for defendant until the time of the present injury on February 13, 1957. He testified that he had had no further trouble during the interim. After he fell at the time of the present injury, "with one leg back underneath me" and twisted, he was helped to the pump house, thence carried to an ambulance and to a hospital at Pittsburg, Kansas, where he remained nine days. He was then moved to St. Mary's Hospital in Kansas City, Missouri, where he remained for approximately three months. He told of considerable pain and some numbness following the fall and much pain thereafter; the hospital records showed the administration of sedatives for pain; he was attended by various doctors. At times bed rails were required to restrain plaintiff in his hospital bed. An operation was eventually performed on plaintiff's back and spine by Dr. Coburn of Kansas City, following a preoperative diagnosis of a herniated disc, based in part on a myelogram which showed a partial block. The operation consumed about two and one half hours. He testified that at this operation dense scarring was found at the site of the previous operation; the fibrous tissue and some of the bony arch were removed. His testimony indicated that no additional herniated disc was found. From this doctor's last observations he thought plaintiff would be able to return to work; he declined to venture a definite opinion on plaintiff's disability at time of trial, without a further examination. There was other medical testimony for defendant to the effect that plaintiff's condition was due to several things,—i. e., arthritis, a contracture of the hamstring muscles (in back of the thighs) a "thinning" of two lumbar interspaces and a remaining degree of disability from the original herniated disc and the operation therefor. This doctor thought that some pain would continue but that plaintiff should

be able to do some form of work. Plaintiff's doctor, a Dr. Rinehart of Ft. Scott, had examined and treated plaintiff since June 1958, largely with physiotherapy, heat, massage, and sedatives. He testified that plaintiff had an unstable back, an involvement of the nerves in the lumbar region, a numbness of the left leg and foot, a dragging of the left foot, an aggravation of prior osteoarthritis, headaches and a nervous and emotional reaction with pain in various localities. He stated that in his opinion plaintiff was totally and permanently disabled from doing manual labor, that his condition was permanent, and that his disability was due to the accident suffered in February 1957; in this he considered as significant the fact that plaintiff had been able to perform manual labor up to the time of the present injury. He also testified that in his opinion, the 1957 fall resulted in another disc injury, and that plaintiff's back was more susceptible to a second injury after the previous disc injury and the resulting operation. He did not recommend any further operative procedure. This man was not a specialist in orthopedics.

The plaintiff testified (May 1960) that he still had pains up his back, to his shoulders, neck and head with "blurry vision"; that his back was weak at all times; that his left leg and foot were "half numb," i. e., on the outer aspects; that he did not have normal control over his left foot; that he had done no work and earned nothing since the present injury; that he could not exert himself because of pain; that he was not confined to the house and often sat in a chair out in the yard; that his wife got a job and works; that he often sleeps at night sitting in a chair because he rests better that way. Plaintiff's wife testified to his ability to work regularly prior to the 1957 injury and to the absence then of any difficulty with his back; that he only reached the eighth grade in school; that he suffered intense pain following the injury; that plaintiff has much difficulty in getting up out of a chair, limps when he walks, and gets up at "all hours of the night" to rest and relax; that she puts on his shoes for him.

Prior to the present injury plaintiff was earning about $300 a month; his earnings for the last twelve months were $3,605.71. To the time of trial plaintiff had lost approximately $11,600 in wages. The bill of his own doctor was some $531. The other medical services were furnished by defendant. We must assume that the jury believed the testimony of plaintiff and his medical witness and found that he was totally and permanently disabled from manual labor, despite the operative procedure. It was not suggested that he could do anything else, of substance, besides manual labor. While the evidence of a 1957 disc injury is not too convincing, the evidence is positive that he was able to do hard work before that injury and has not been able to do any since. The trial court has already acted, which makes us more reluctant to act. Parlow v. Carson-Union-May-Stern Co., Mo.Sup., 310 S.W.2d 877. At trial time plaintiff had an expectancy of 21.48 years.

We are unable to say that this verdict was the result of passion and prejudice, under our decisions. Abernathy v. St. Louis-San Francisco Ry. Co., Mo.Sup., 237 S.W. 2d 161, 164; O'Brien v. Louisville & N. R. Co., 360 Mo. 229, 227 S.W.2d 690, 693–694. So far as excessiveness is concerned cases in which the appellate court has merely affirmed, without reducing the verdict, are of little help. Timmerman v. Terminal R. R. Ass'n of St. Louis, 362 Mo. 280, 241 S. W.2d 477; Martin v. Kansas City, Mo.Sup., 340 S.W.2d 645. It will be impossible to discuss the various cases cited pro and con on the question of excessiveness. Some similarity is seen in the earnings and subsequent condition of the plaintiff in Tatum v. Gulf, Mobile & Ohio R. Co., 359 Mo. 709, 223 S.W.2d 418, although there were more specific and probably more serious injuries there; that verdict was reduced from $50,-000 to $42,500 in 1949. Economic conditions have changed considerably in the interven-

ing years. Some similarity also appears in the plaintiff's condition in the case of Breland v. Gulf, Mobile & Ohio R. Co., Mo. Sup., 325 S.W.2d 9, where a verdict of $75,000 was reduced here to $50,000. We have considered the cited cases of Abernathy v. St. Louis-San Francisco Ry. Co., Mo.Sup., 237 S.W.2d 161; Dempsey v. Thompson, 363 Mo. 339, 251 S.W.2d 42; O'Brien v. Louisville & N. R. Co., 360 Mo. 229, 227 S.W.2d 690; Amos v. Southern Ry. Co., Mo.Sup., 273 S.W.2d 155; Cassano v. Atchison, Topeka & Santa Fe Ry. Co., 362 Mo. 1207, 247 S.W.2d 786; Beard v. Railway Express Agency, Inc., Mo., 323 S.W.2d 732; Van Norman v. Illinois Central R. Co., Mo.Sup., 320 S.W.2d 512. In some of those cases the plaintiffs were working at some form of occupation at the time of trial. We have also considered: Lange v. Kansas City Southern Ry. Co., Mo.Sup., 290 S.W.2d 71, where the injuries were very similar, the plaintiff was much younger, and a verdict reduced to $50,000 by the trial court was allowed to stand; Giambelluca v. Missouri Pacific R. Co., Mo. Sup., 320 S.W.2d 457, where a $75,000 award was reduced to $50,000; the initial injuries were more obvious and apparently more severe but the resulting disability was not total and the loss of wages was similar. See also, generally, Erbes v. Union Electric Co., Mo.Sup., 353 S.W.2d 659; Warning v. Thompson, Mo.Sup., 249 S.W.2d 335, 30 A.L.R.2d 1176; Rogers v. Missouri Pacific R. Co., Mo.Sup., 308 S.W.2d 688; Pinter v. Gulf, Mobile & Ohio R. Co., 362 Mo. 887, 245 S.W.2d 88; Wehrli v. Wabash R. Co., Mo., 315 S.W.2d 765, certiorari denied 358 U.S. 932, 79 S.Ct. 321, 3 L.Ed.2d 304. Giving to plaintiff the benefit of the favorable testimony as we must do, we cannot find that there was no substantial evidence to support a verdict of $50,000, nor that the trial court abused its discretion in limiting the remittitur to $25,000.

Plaintiff's suggestion that a penalty should be imposed here for a vexatious appeal is so frivolous that it merits no consideration whatever. We are surprised that experienced counsel would make such a suggestion in this case.

The judgment will be affirmed. It is so ordered.

WESTHUES, C. J., and LEEDY, HOLLINGSWORTH and HYDE, JJ., concur.

STORCKMAN, J., concurs in result.

DALTON, J., dissents in separate opinion filed.

DALTON, Judge (dissenting).

It is with regret that I find it necessary to dissent in this case and to specifically state the reasons for my dissent.

The essential holding of the majority opinion is that plaintiff can submit and recover on general negligence under the res ipsa loquitur doctrine even though he has pleaded and proved specific negligence and tendered to the court an instruction on such specific negligence. The holding, evidenced by a single paragraph of the majority opinion, is as follows:

"We hold that the submission of general negligence was proper, but *we do so on the peculiar facts of this case.* We do not mean to impair in any way the general rule that the pleading or precise proof of specific negligence constitutes a bar to the submission of general negligence as to the same act or occurrence, or as to an occurrence which the specific negligence explains." (Italics ours.)

In other words, the majority opinion while purporting to recognize certain well-established rules of practice and procedure in this state has undertaken to write *an exception* thereto for which exception we find no basis in this record. We believe that the writing of such *an exception* into the established law of this state will result in unlimited confusion and misunderstanding; and that it will cause the members of the Bar and the courts of this state an un-

ending amount of grief and difficulty. In our opinion the record in this case provides no basis for such an exception to the general rules.

In this case the plaintiff, in a single count of his petition, pleaded general negligence under the res ipsa loquitur doctrine as a contributing cause of his injury and also pleaded specific negligence of defendant in failing to provide him a reasonably safe place in which to work. He then offered such evidence as he deemed sufficient to make out a case for the jury of general negligence under the res ipsa loquitur doctrine and also a case for the jury on the specific negligence pleaded in his petition. Thereafter, he submitted to the court instructions under *each* of the mentioned theories, and could, no doubt, have as easily obtained a verdict for plaintiff on the basis of the specific negligence charged and supported by evidence as he did under the general negligence submission. The trial court, however, refused the instruction submitting specific negligence, but gave the instruction submitting general negligence and a verdict was returned for plaintiff. It is defendant's position that, *under the facts shown,* the plaintiff had no right to submit his case on general negligence under the res ipsa loquitur doctrine and give the jury a roving commission to return a verdict for plaintiff on any type or kind of negligence a jury might find from the unusual circumstances shown. With *that position we fully agree.*

The majority opinion recognizes the existence of two well-settled rules of practice and procedure, to wit: (1) that where a complaint contains a charge of general negligence coupled with a charge of specific negligence the complainant will be confined to the specific acts of negligence charged in his petition; and (2) that where plaintiff alleges the specific acts of negligence causing his injury he is required to prove those specific acts and cannot rely upon the doctrine of res ipsa loquitur. See West's Digest, Negligence, ⊕119(4).

Other cases appear under particular headings in West's Digest. And see the cases cited in the majority opinion.

In the case of Zasemowich v. American Mfg. Co., Mo.Sup., 213 S.W. *799,* 802(3) the court said: "It has now become elementary law in this state that where a general allegation of negligence in a petition is followed by a charge of specific acts of negligence, the plaintiff must recover, if at all, upon the specific acts thus alleged."

In the case of State ex rel. Anderson v. Hostetter, 346 Mo. 249, 140 S.W.2d 21, 25(3-4) the court said: "Furthermore, we have held that where a general charge of negligence is coupled with specific charges, as here, the specific charges take precedence and any question of a general allegation passes out of the case." And see McManamee v. Missouri Pac. Ry. Co. (1896), 135 Mo. 440, 37 S.W. 119, 121.

In determining whether the record presents a substantial basis for the *proposed exception* a review of the record is required.

In his petition, after pleading the specific facts upon which he sought to invoke the res ipsa loquitur doctrine, the plaintiff alleged "that he had nothing to do with the installation or fixation or securing of said pipe and the mechanics thereof, but all of the same was exclusively under the control of defendant at all times, and he does not know the exact reason that said pipe suddenly began revolving wildly and seemingly out of control, but the same and said occurrence was extremely unusual and out of the ordinary and would not have taken place without negligence and failure to use due care on the part of defendant, and the facts thereof are peculiarly within the knowledge of defendant, and in relation thereto plaintiff alleges that the aforesaid negligence of defendant directly contributed to his said injuries."

This pleading clearly invoked the doctrine of res ipsa loquitur negligence in its strict and distinctive sense.

Thereafter, in the same count of his petition the plaintiff pleaded the specific negligence of the defendant in failing to provide him a safe place in which to work and pin-pointed the exact negligence causing his injury. The charge of specific negligence is fully set out in the majority opinion, to which opinion reference is had.

At the close of all the evidence the plaintiff submitted to the court *two* instructions, the first being based upon the plea of general negligence under the res ipsa loquitur doctrine, which instruction is fully set out in the majority opinion. "Such a submission of necessity excludes from its hypothesis reliance upon specific circumstances or circumstantial evidence which affirmatively tends to establish negligence of the defendant as a matter of fact as contrasted with negligence inferred from the permissible deduction of probability based on common experience." Jarboe v. Kansas City Public Service Co., 359 Mo. 8, 220 S.W.2d 27, 31(11–13); Belding v. St. Louis Public Service Co., Banc, 358 Mo. 491, 215 S.W.2d 506, 509(1–3). Plaintiff also asked the court to give Instruction No. 10, based upon his pleading and proof of specific negligence, as follows:

### Instruction No. 10

"The Court instructs the jury if you believe from the evidence that defendant on February 13, 1957, at the time and place described in evidence maintained on its property and right of way wet and slick clay near said air compressor and sanding facilities and that plaintiff was likely to use said surface thereat in performing his customary duties, and that the above-submitted condition of the surface thereat rendered same and his working place provided by defendant for his use, if so, dangerous and not reasonably safe for such ordinary use, if so, and that defendant knew or by ordinary care would have timely known of all the above-submitted facts prior to his alleged *slipping* thereon and in time by such care to have remedied said condition and made said surface thereat reasonably safe for such use and thereby prevented plaintiff from *slipping* and *falling* and being injured, if so, and that defendant negligently failed so to do and that as a direct result thereof as a whole or in part plaintiff on said occasion *slipped* on said surface thereat on the said property of defendant, if so, *and was thereby injured*, if so, then you will return a verdict for plaintiff." (Italics ours.)

In requesting the court to give this latter instruction the plaintiff, in effect, made a solemn admission that the record in the case fully supported the giving of this instruction, as the record in fact did.

It will be noted that the majority opinion, with meticulous care, has set out the detailed facts and circumstances upon which the plaintiff relies to support his charge of general negligence under the res ipsa loquitur doctrine, but when the writer of the opinion reached the question of proximate cause, that is, as to whether any negligence connected with the unusual facts and circumstances shown caused plaintiff's injuries, he found no such evidence in the record and was forced to admit that, "It may fairly be said that plaintiff did not state the precise cause of his slipping and fall." A reference is then made to the statement of plaintiff's counsel that plaintiff had "slipped there in some clay" and a further reference is made to other evidence as to the presence of "wet clay around the place where they worked."

It is apparent, therefore, that respondent's statement in his brief is correct to the effect that plaintiff "did not offer evidence as to *why or how he slipped*." (Italics ours.) It does appear, however, that he fell and was injured, *because he slipped*. A careful reading of the record, and particularly a study of plaintiff's own testimony, discloses that he did not attribute his slipping and falling, or his injuries to either the whirling pipe or the noise therefrom, nor to his fear thereof, nor to his excitement or haste to escape. He limited his testimony to the mere fact

that he "didn't get but about two feet when he slipped and fell." It is true that plaintiff was, no doubt, scared and may have started to run, as did the other employees, and that such was a natural reaction; however, only the plaintiff *fell* and he did not ascribe his fall to any matter connected with the unusual situation or his reaction thereto, but to the fact that he slipped. *"I didn't get to run, my feet went out from under me,* my left leg went underneath me and I fell back." (Italics ours.) As to the condition of the ground, he said: "The ground was wet * * * this clay that they dug there was wet * * all around the south side of the tank and part of the back end of the tank where the release valve was * * *." In this case it is clear that plaintiff's own testimony does not ascribe his fall or his injuries to the unusual circumstances which were set out with such meticulous care in the majority opinion. He ascribed his injuries to the fact that he *slipped and fell.*

While we recognize that a jury under a proper res ipsa loquitur submission, if the plaintiff had had a right to so submit his case, a jury might have supplemented plaintiff's testimony and found a connection between the unusual circumstances and plaintiff's fall, yet on this record the plaintiff was not entitled to a res ipsa loquitur submission in view of his own pleadings, his own testimony and the fact that he and his counsel, by a specific instruction tendered to the court, recognized that plaintiff slipped and fell and was injured due to the wet clay and the failure of the defendant to provide him with a safe place in which to work. We are not here dealing with a case where a plaintiff pleaded general negligence only and made no proof of specific negligence.

In pleading general negligence under the res ipsa loquitur doctrine and also specific negligence in the same count, the plaintiff was pleading two totally different theories of recovery, because proof of general negligence under the res ipsa loquitur doctrine may be made without the offering of any

evidence of negligence, as such, while proof of specific negligence requires direct or circumstantial evidence of specific negligence. The difference between these two theories is the underlying basis for the development and application of the two rules of pleading and practice hereinbefore set out and also recognized in the majority opinion.

In making *an exception* to these well-established rules, the majority opinion overlooks the nature and purpose of the res ipsa loquitur doctrine and the reasons which brought the established rules into existence in the first place. See 38 Am. Jur., Negligence, Sections 297 and 298.

It has been said that the principal difference between a res ipsa loquitur case and a specific negligence case would seem to be that the very basis of liability, *the existence of some kind of negligence* (any type or kind that the jury may find), may be shown by a particular kind of circumstantial evidence, namely, an unusual occurrence of a character which ordinarily results from negligence, and from which, therefore, the negligence is a reasonable conclusion under the doctrine of probabilities, while in a specific negligence case the careless acts or omissions which constitute negligence must be stated and proved; in other words, in a res ipsa case, the ultimate fact, *some type or kind of negligence, is inferred without any evidential facts except the unusual occurrence itself,* while in a specific negligence case there must be evidential facts sufficient to show some pleaded negligent acts or omissions which were the proximate cause of the occurrence. Mueller v. St. Louis Public Service Co., 358 Mo. 247, 214 S.W.2d 1, 3; Palmer v. Brooks, 350 Mo. 1055, 169 S.W. 2d 906, 909; Gibbs v. General Motors Corp., 350 Mo. 431, 166 S.W.2d 575, 579; Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1004; Removich v. Bambrick Bros. Construction Co., 264 Mo. 43, 173 S.W. 686, 687, L.R.A.1917E, 233; Girratono v. Kansas City Public Service Co., 363 Mo. 359, 251 S.W.2d 59, 62.

It has also been said that although the doctrine of res ipsa loquitur is a rule of evidence, it does not rest for its application on specific circumstances peculiar to an individual occurrence and pointing of their own force to *a specific human fault* as does circumstantial evidence, but in its strict sense is based on generic circumstances peculiar to a class of physical causes producing an occurrence and pointing to *no specific human fault*. Belding v. St. Louis Public Service Co., supra, 215 S.W.2d 506; Tayer v. York Ice Machinery Corp., 342 Mo. 912, 119 S.W.2d 240, 117 A.L.R. 1414.

The plaintiff in the first count of his petition, as stated relies on res ipsa loquitur in its strict and distinctive sense and not on circumstantial evidence. "While the rule of res ipsa loquitur in its distinctive sense, and the principal as to circumstantial evidence, perform different and distinctive functions, or at least work with different materials, they are alike in this, that they seek to infer from what is known, or at least from what the evidence, direct or circumstantial, tends to establish, *the existence of some unknown fault of omission or commission constituting negligence,* and not merely to characterize known conditions as negligence." (Italics ours.) Annotation 59 A.L.R. p. 468, 470.

Plaintiff, therefore, in pleading general negligence under the res ipsa loquitur doctrine and also specific negligence in the same count of his petition, and in further seeking to submit his cause to the jury on both theories at the same time, was seeking to establish the existence of some unknown fault of omission or commission on the part of the defendant constituting negligence (a roving commission to the jury) and also to establish the specific negligence pleaded and shown by his own evidence.

The majority opinion recognizes the absolute inconsistency between these two theories when it states: "The two types of negligence should not have been combined, and the court properly refused plaintiff's separate tendered instruction on specific negligence, having given Instruction No. 1."

However, we think the settled law of this state required the court to refuse Instruction No. 1, because in such situation plaintiff was bound by his own pleading and proof of specific negligence and could not submit his cause on general negligence. Cook v. Union Electric Light & Power Co., Mo.App., 232 S.W. 248, 249.

Further, the doctrine of res ipsa loquitur has many times been referred to as *a rule of necessity* to avoid the miscarriage of justice where direct evidence is unavailable and it may be invoked where there is no evidence of specific negligence causing the injury. Belding v. St. Louis Public Service Co., supra, 215 S.W.2d 506, 509(4); Gibbs v. General Motors Corp., supra, 166 S.W.2d 575. No such necessity appears in this case.

The res ipsa loquitur doctrine is also *a rule of evidence,* as stated, in that it permits a prima facie case of "some kind of negligence" to be established without direct proof of any particular negligence and, therefore, furnishes a substitute for specific proof but, if the plaintiff either *pleads the specific negligence causing his injury* or proves specific negligence, the jury may not be permitted to speculate or guess that his injury was caused *by some other unknown and unspecified type of negligence.*

"The plaintiff is bound by his evidence in a res ipsa case just as he would be in any ordinary negligence action and cannot in effect say to the jury, 'I have shown you exactly how the accident occurred but you are, nevertheless, still at liberty to speculate and presume it may have happened some other way.'" Conduitt v. Trenton Gas & Electric Co., 326 Mo. 133, 31 S.W.2d 21, 25(5); Sanders v. City of Carthage, 330 Mo. 844, 51 S.W.2d 529, 531(4, 5); Berry v. Kansas City Public Service Co., 343 Mo. 474, 121 S.W.2d 825, 830(3). Clearly, the plaintiff cannot "fill in all the gaps in his own case and leave nothing to inference, and then recover on some other

theory." Conduitt v. Trenton Gas & Electric Co., supra. That is exactly what the plaintiff has done in this case.

In view of the record in this case and the established law, it is not surprising that the respondent in his "supplemental and answer brief", filed in this case after its transfer to Court en Banc, said: "At the outset, we have a confession. We could find no case where the procedural rule of pleading invoked * * * had ever been applied to our situation or had ever been applied to FELA cases, and did not conceive this even as possible, and we are now called upon to defend our course." Respondent has cited no case and we find none cited in the majority opinion which justifies the making of *an exception* to the well-established rules of practice and procedure heretofore in effect in this state.

In a specific negligence case the plaintiff may, of course, plead as many specific charges of negligence as may have contributed to cause his injury and he may submit such charges as are supported by evidence, and he may submit them conjunctively or disjunctively, but to hold, as the majority opinion does, that "While the problem is certainly not free of difficulty, we have determined that the allegations of specific negligence in failing to furnish plaintiff a safe place to work (and referring to wet, slick clay) should not and do not affect his right to submit a res ipsa theory *on the already completed negligence alleged* in the sudden and violent revolving of the pipe," (italics ours) is to make *an exception* which overlooks the nature and purpose of the res ipsa loquitur doctrine and its *inconsistency with specific negligence,* in a case where the plaintiff has pleaded and proved specific negligence and requested an instruction on the ground that his injury was caused by such specific negligence in failing to provide him a reasonably safe place in which to work. Jarboe v. Kansas City Public Service Co., supra, 220 S.W.2d 27, 31(7–10).

It is difficult for us to find any real basis in this record for *the exception* which the majority opinion proposes to make, because it is conceded that, except for some basis for making *an exception,* the holding is contrary to well-established general rules and particularly to the rule that where plaintiff pleads and proves specific negligence he may not recover upon general negligence.

In this case, as stated, the plaintiff attempted to submit his case upon *both* general negligence under the res ipsa loquitur doctrine (Instruction No. 1) and on specific negligence, as set out in Instruction No. 10. He failed to do so only because the trial court refused to give Instruction No. 10 on specific negligence. In trying to find a basis for *the proposed exception* to the general rules, the majority opinion refers to "the peculiar facts of this case" and says that "the totality of the facts involved *two successive acts or occurrences of alleged negligence, each separate and distinct from the other."* (Italics ours.) There is also a suggestion that plaintiff "might *elect* to ignore the specific negligence (which may also have been a contributing factor) without impairing the always essential element of causation." (Italics ours.) This latter statement ignores the fact that *plaintiff did not elect to ignore specific negligence* but, on the contrary, elected to submit his case upon *both* general and specific negligence. His failure to do so was only because the trial court gave his instruction on general negligence and refused his instruction on specific negligence, but plaintiff is bound by his request for the submission on specific negligence, and the error assigned on this appeal is on the giving of the instruction on general negligence. Further, the statement in the opinion that "the totality of the facts involved two successive acts or occurrences of alleged negligence, each separate and distinct from the other" and that the "specific negligence was a subsequent and different thing" ignores the fact that plaintiff himself by his own pleadings and evidence and by tendering Instruction No. 10 recognized that defendant's negligent failure to provide a safe place to work was

clearly a subsequent, intervening, independent and direct proximate cause, occurring after the unusual circumstances, and directly causing plaintiff to *slip, fall and be injured.*

The only other possible basis, which the majority opinion suggests as a ground for *an exception* to the general rules, is because the present action is an F.E.L.A. case and because under the substantive law, as applied by the Federal courts in such a case, "any demonstrated negligence of the defendant which 'played a part' in the injury is sufficient to make a submissible case." We assume that this assigned reason *for the exception* is based essentially upon the "in whole or in part" provision of the Federal Employers' Liability Act, but, under the facts of this case, that rule is wholly unimportant because there is no question here but that plaintiff made a case for the jury and the case involves only the negligence of a *single defendant* and there was but a single fall and a single injury to plaintiff. The issue here is as to a proper submission of the case under the law of Missouri. The majority opinion fails to state why the established rules of practice and procedure in this state would not, under the facts of this case, accord to an F.E.L.A. claimant all of the substantive rights to which he is entitled. In other words, the opinion states no substantial basis for making *an exception* to the general rules on the facts shown by this record.

We can find no sound basis in this record for making *any exception* in this case to the established rules of practice and procedure and, if *an exception* is to be made, it should be made on a more substantial basis than appears in the majority opinion. Even if some valid basis for *an exception* should be worked out under similar facts, it should not be done in a case where the plaintiff has *affirmatively elected* to act in direct violation of long-established rules of practice and procedure, without any necessity therefor, and has pleaded, proved and asked the trial court *to submit both general and specific negligence for one injury against one defendant* and where his request for the giving of Instruction No. 10 *affirmatively admitted* that he had pleaded, proven and asked recovery upon the specific negligence charged, which actually caused his injury. The court's error in giving the general negligence instruction under the circumstances shown was clearly chargeable to plaintiff's counsel and the court should not now undertake to relieve him from his own folly.

The majority opinion refers to two cases as lending "some support * * * by analogy." The first is Hall v. St. Louis Public Service Co., Mo.Sup., 266 S.W.2d 597, where a plaintiff was caught between the doors of defendant's bus as she attempted to alight and, when she screamed, the doors opened up and she fell out into the street. While in that case the cause was submitted upon the res ipsa loquitur doctrine based upon the closing of the doors, it is clear that the plaintiff in her petition had not pleaded the opening of the doors as the specific negligence which caused her fall and injury. Neither had she shown that her injuries were sustained absent the fact that she had first been caught and then released. Nor had the plaintiff in that case submitted an instruction and asked the court to submit to the jury, as a ground for recovery, the defendant's specific negligence in opening the doors and causing her to fall and be injured. We find no analogy in that case to support the proposed *exception* to the general rules.

The case of Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W.2d 473 is also cited in support of *the proposed exception* to the well-established rules of practice and procedure in this state. We find nothing in that case to support the trial court's action in this case in giving the res ipsa loquitur instruction and in refusing the instruction which plaintiff tendered on specific negligence. In the Jones case there was no pleading or proof of any specific negligence of defendant, nor was there a tender of an instruction on that basis. It is clear from a reading of the opinion that it was plaintiff who instinctively grabbed

the steel gate as the elevator started to descend. In that case the plaintiff did not attribute his injuries to any negligence of defendant other than the res ipsa loquitur negligence pleaded and submitted.

It seems to us that the statement in the opinion as to the ruling of the case "on the specific facts of this case" is but an excuse for the making of *an exception* for which we find no support in any Missouri case or in any recognized text. We think the opinion is definitely erroneous and a most dangerous precedent. We must, therefore, most respectfully dissent.